## In re HANSEN'S GUARDIANSHIP.

### No. 4352.   Decided June 4, 1926.   (247 P. 481)

1. WILLS—DEVISE TO WIDOW OF INCOME FROM ENTIRE ESTATE DURING LIFE HELD INTENDED TO BE IN LIEU OF WIDOW'S DISTRIBUTIVE SHARE. Husband's will, giving widow income from residuary estate during her life, *held* to show intention that provisions for widow in will should be in lieu of widow's distributive share.

2. WILLS. Widow's right to elect to take under will, under Comp. Laws 1917, § 6407, or to take distributive share, is a "property right."

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property Rights.]

3. WILLS—WIDOW, ELECTING TO TAKE DISTRIBUTIVE SHARE RATHER THAN PROVISION IN HUSBAND'S WILL, IS LIMITED TO A ONE-THIRD INTEREST IN THE REAL PROPERTY. Widow, electing to take distributive share rather than property given by husband's will, is limited to a one-third interest in real property, and receives no personal property.[1]

4. WILLS—WIDOW'S GUARDIAN, BY FAILING TO ELECT TO TAKE UNDER HUSBAND'S WILL, OR BY ELECTING INDEPENDENTLY OF ORDER OF COURT, CANNOT BIND WARD, IF ELECTION WAS NOT FOR HER BEST INTERESTS. Incompetent widow's guardian, by failing to elect to take under husband's will, or by electing independently of court order, cannot bind ward, if election was not for her best interests.

5. WILLS—COURT MAY ORDER ELECTION FOR WIDOW UNDER GUARDIANSHIP TO TAKE UNDER HUSBAND'S WILL, THOUGH ELECTION NOT MADE WITHIN FOUR MONTHS (COMP. LAWS 1917, §§ 6407, 7826, 7829, 7830, 7558; CONST. ART. 8, § 7). Court has jurisdiction to direct election for widow under guardianship to take under provisions of husband's will at any time, notwithstanding Comp. Laws 1917, § 6407, provides that widow shall be conclusively presumed to have renounced provisions of will, unless she accepts

---

[1] *In re Little*, 22 Utah, 204, 61 P. 899.

Corpus Juris-Cyc. References:

[1]   Wills 40 Cyc. p. 1964 n. 24; p. 1974 n. 2.

[2-5]   Courts 15 C. J. p. 1007 n. 90; Wills 40 Cyc. p. 1963 n. 22; p. 1974 n. 8; p. 1975 n. 18; p. 1989 n. 75.

[6-8]   Wills 40 Cyc. p. 1974 n. 10, 11.

same within four months, and that, if incompetent, guardian shall elect, in view of court's continuous duty, to protect property of ward, and in view of sections 7826, 7829, 7830, 7558, and Const. art. 8, § 7.

6. WILLS—MATTERS TO BE CONSIDERED IN DETERMINING WHETHER BEST INTERESTS OF WIDOW UNDER GUARDIANSHIP REQUIRE ELECTION TO TAKE UNDER WILL OF HUSBAND SPECIFIED. In determining whether best interests of widow under guardianship require election to take under will of husband, court should consider what is best interests of ward, all matters considered, and not from purely monetary viewpoint, and should take into consideration facts that insane person has no need for money or property further than for comfortable care; that husband has right to dispose of property; and that wife's kinsmen have no claim on husband's bounties, while those of husband have.

7. WILLS—EVIDENCE HELD TO SUSTAIN FINDING THAT IT WAS FOR BEST INTERESTS OF WIDOW UNDER GUARDIANSHIP THAT SHE TAKE UNDER HUSBAND'S WILL. Evidence *held* to sustain finding that it was for best interests of widow under guardianship that she take under husband's will giving her income from entire estate during life, rather than to take her distributive share of one-third interest in the real estate.

8. WILLS—IN DETERMINING FOR WIDOW UNDER GUARDIANSHIP WHETHER TO ELECT TO TAKE UNDER HUSBAND'S WILL GIVING WIDOW INCOME OF ESTATE FOR LIFE, COURT COULD CONSIDER THAT GUARDIAN HAD EXPENDED INCOME FOR HER SUPPORT. In determining for widow under guardianship whether to elect to take under husband's will giving her income of entire estate for life, court could consider fact that guardian had expended $2,000 of such income for her support.

Appeal from District Court, First District, Box Elder County; *M. C. Harris*, Judge.

In the matter of the guardianship of Ellen K. Hansen. On petition of John T. Hansen, her guardian, to authorize election on behalf of his ward, a widow, to take under the provisions of her husband's will, rather than to take her distributive share. Order was made accordingly.

ON APPEAL. JUDGMENT AFFIRMED.

*B. C. Call*, of Brigham City, for appellant.

*LeRoy B. Young*, of Brigham City, for respondent.

GIDEON, C. J.

Christian Hansen died in Box Elder county, this state, on August 19, 1921. He was a resident of that county. He left surviving him as his heirs his widow, Ellen Katherine Hansen, and five children by a former marriage. Ellen K. Hansen was a widow at the time of her marriage to the deceased. She had children by her former marriage. There were no children issue of her marriage with the deceased. The deceased left a will and testament. The will was regularly admitted to probate on September 12, 1921. One J. Ernest Dewey, nominated in the will to be its executor, was, by the court, appointed as executor of the estate, and at this time is the regularly and duly appointed, qualified, and acting executor of said estate.

The fourth section of the will reads as follows:

"I direct that after the payment of all my just debts and obligations the residue and remainder of my estate of every kind and character be, by my executor, held in trust for my beloved wife Ellen Katherine Hansen for her sole and only use, and that the income from my estate be, by my executor, paid to my said wife for and during her lifetime."

In the fifth section, after the enumeration of small bequests designated in subsections "a" to "e," inclusive, effective after the death of the widow, the subsection designated "f" is as follows:

"I direct that after the payment of the bequests heretofore designated 'a' to 'e' the rest and residue of my estate, both real and personal be sold and divided equally among my six children, namely, John T. Hansen, son; John G. Hansen, adopted son; Christian Hansen, son; Germer, daughter; Mary H. Marble, daughter; Zina Wordley, daughter—provided, however, that my said children shall have the first opportunity to purchase all or any part of said property, and if they shall agree among themselves as to which shall purchase said property

and the price to be paid therefor, such agreement shall be binding upon my executor and all other persons whomsoever. If my said children shall not reach an agreement mutually satisfactory to all of them within six months after the death of my beloved wife, then my executor shall proceed as hereinabove provided."

On October 25, 1921, John T. Hansen and two other children of deceased, and likewise stepchildren of Ellen K. Hansen, filed their petition in the district court of Box Elder county praying that John T. Hansen be named guardian of the estate of Ellen K. Hansen incompetent. On November 28, 1921, John T. Hansen was, by order of the court, appointed general guardian of said incompetent. Ellen K. Hansen, as appears from the record, was not an insane person, but was an incompetent because of age. She was about 90 years old, could not speak the English language, and had no experience in looking after her affairs, and it was deemed advisable by every one, and by the court also, that some one be named to manage her affairs.

The real property belonging to the estate was rented by the executor from year to year following his appointment. The income from the personal property and the rents from the real property were, by the executor, turned over to the guardian after payment of the necessary expenses. The guardian, in the exercise of his duties, employed a nurse to care for his ward and caused to be furnished such necessaries of life in the way of clothing, telephone service, etc., as Mrs. Hansen had enjoyed during the life of her husband. The widow was permitted to remain in the old home. It appears she was very much attached to that home and desired to end her days there. She and her husband had resided there for more than 30 years. That condition continued until the month of October, 1924. On October 31, 1924, B. C. Call, an attorney at law, on behalf of some of the grandchildren of Ellen K. Hansen, filed a petition in the guardianship proceeding asking that the letters of guardianship issued to John T. Hansen be revoked; that said guardian be required to make a report of the condition of the estate.

The guardian answered this petition, and, at about the same time, filed his report as such guardian. He likewise filed a separate petition praying the court to authorize an election on behalf of his ward, the widow of the deceased, to take under the will, rather than to take her distributive share. Hearings were had on these various petitions and an order was made approving the account of the guardian. Also an order was made authorizing the said John T. Hansen, as guardian, to elect on behalf of the widow, his ward, to take under the provisions of the will, rather than her distributive share as widow. The court deemed it advisable, by reason of the personal interest of the guardian, John T. Hansen, in his father's estate, that some other suitable person be named as guardian of the estate of the widow. Accordingly the resignation of Mr. Hansen as guardian was requested and another guardian appointed. The court, however, was careful to indicate that it was by reason of no failure of the guardian to discharge his duties in a satisfactory manner that his resignation was requested.

Comp. Laws Utah 1917, § 6407, under the title "Wills and Succession," reads as follows:

"If the husband shall make any provision by will for the widow, such provision shall be construed to be in lieu of the distributive share secured by the next preceding section, unless it shall appear from the will that the decedent designed the testamentary provisions to be additional to such distributive share, in which case the widow shall be presumed to have accepted both such testamentary provisions and such distributive share. If, however, it does not appear from the will that its provision for the widow is additional, then the widow shall be conclusively presumed to have renounced such provision, and to have accepted her distributive share, unless within four months after the admission of the will to probate, or within such additional time before distribution as the court may allow, she shall, by written instrument filed with the clerk of the court, accept the testamentary provision, which acceptance shall be construed to be a renunciation of her distributive share. In the event that the wife shall be insane or incompetent, or absent from the state, an election shall be made for her by a general guardian, if she have one, or by a special guardian for the purpose, appointed by the court."

It sufficiently appears in the will of the deceased that he designed the testamentary provisions of his will to be in lieu of his widow's distributive share of his estate. We shall not therefore consider that question further.

The statute quoted expressly provides that, in the event of the incompetency or insanity of the widow, an election shall be made for her by a general guardian if she have one. In the instant case a general guardian of the estate of the widow was appointed within two months after the will had been admitted to probate. The time in which the widow could have made an election, had she been competent, had not then expired. The guardian made no election within four months after his appointment; in fact, made none until after more than 3 years had elapsed. It is frankly stated in his petition asking for the right to make an election and in his reply to the answer of appellants that he was not advised that such an election was necessary on his part.

The two determining questions, as I understand the record, are: (a) Did the failure of the guardian to make an election or to apply to the court for authority to make an election within four months after the admission of the will to probate conclusively prevent an election at a later date, and is the widow conclusively presumed to have accepted her distributive share and renounced the provisions made for her in the will by the failure to make such election within four months? (b) Assuming that the court had the power and authority to direct the guardian to make an election at the time when such order was given, did the court err in so directing the guardian to take under the provisions of the will?

The duties and power of a general guardian are prescribed by other provisions of the Code. It must necessarily follow that the general guardian mentioned in the section quoted is limited in his duties and power by the other provisions of the Code which undertake to define and prescribe the powers and duties of general guardians. By the pro-

visions of section 7826, supra, the general guardian has the care and custody of the person of his ward and the management of his estate during the continuance of such guardianship. By section 7829 it is made the duty of the guardian to safely keep the property of the ward, not to permit unnecessary waste or destruction of the real property, nor to make any sale of such property without an order of the court. It is provided in section 7830 that every guardian must manage his ward's estate frugally and without waste and apply the income and profits for the comfortable and suitable maintenance of his ward. The right given to the widow by section 6407, supra, to elect to take under the provisions of the will or take her distributive share, is a property right, and also a substantial right, a right of which an incompetent ought not be deprived, unless the plain intent of the statute compels such denial. The determination of this right might, probably in most instances would, be based upon more than one consideration. The widow may be influenced in making her election, not only as it affects her pecuniary interests, but likewise by a desire on her part to have the wishes and will of her husband carried into execution. Her decision might be influenced by the interests of her relatives or others to whom she is under obligations. The widow in this case, being adjudged an incompetent before the time had expired in which she could make an election, ought not under well-recognized equitable principles be denied the right of having an election made for her by the failure of her guardian or by the failure of the court to direct the guardian to make an election within the four months' period. The provision of the statute providing that the guardian shall make the election does not necessarily require a construction that the guardian is required to make it within four months. We prefer, however, to place our conclusion upon broader grounds; namely, that the failure of the guardian to act and the failure of the court to direct the guardian to act within the four months' period does not and ought not deny

the widow that right if it is to her best interest to elect to take under the provisions of the will.

The district courts of this state are courts having general jurisdiction of any and all matters civil and criminal. Const. art. 8, § 7. By section 7558 of the Code those courts are given authority to enforce the provisions of the Probate Code including the sections that relate to the administration of estates of incompetents. Our Probate Code enjoins upon our district courts largely the same duties that are imposed upon and administered by the English chancery courts in protecting lunatics, insane people, and incompetents and their estates. The duties and authority of the English chancery courts over the persons and estates of incompetents will be found stated at some length in *Re Connor*, 254 Mo. 65, 162 S. W. 252, 49 L. R. A. (N. S.) 1108, to which reference will hereinafter be made.

This court apparently has not had occasion heretofore to consider and determine the particular question here under consideration; nor has any authority from other jurisdictions been found under similar statutes to ours. The facts considered by the Supreme Court of Pennsylvania in *Kennedy* v. *Johnston*, 65 Pa. 451, 3 Am. Rep. 650, are somewhat similar to the facts in the instant case. In the course of the opinion in that case the court said:

"In this state the fifth article of the Constitution, § 6, confers on the court of common pleas the power of a court of chancery, so far as relates (inter alia) to the persons and estates of those who are non compotes mentis. The Act of June 13, 1836, relating to lunatics and habitual drunkards (Pamph. L. 592), was passed to carry out this provision of the Constitution. It is under this act the committee derives all his powers, and unless the power to elect can be found in the law or be fairly inferred from its general terms, it does not exist. It is obvious there is no such power conferred in words general or special, and there appears to be nothing in the character and nature of the duties enjoined from which the power can be drawn. When properly qualified the law confers on the committee the management of the real and personal estate of the lunatic with power to apply the income only to the payment of his debts, and the support of himself and his

family. But beyond this the committee cannot go in disposing of the estate without the aid or sanction of the court. If the income be insufficient, the principal cannot be used, or the real estate converted, without the direction of the court. To the court belongs the power of making orders touching the care and custody of the person, and the management and safe-keeping of the estate of the lunatic, necessary and proper for the purpose. The election of one of two things, when only one can be chosen for the lunatic, is undoubtedly a judicial and not a ministerial act, and belongs to the court and not to the committee."

The committee mentioned in that excerpt is invested with many, if not all, of the powers of a general guardian under our Code. The committee, under the statute of Pennsylvania, was not authorized to sell the property of the ward or to make any contract concerning the sale of the same. So, under our statute, the general guardian is not authorized nor empowered to sell real property, or make any contract for the sale of the same, without petition and order of the court authorizing him so to do.

In the instant case the court found, and the testimony abundantly supports such findings, that the property of the deceased's estate consisted of real and personal property; that the real property was of the value of approximately $15,000 and the personal property about $4,000. If the widow had been competent to make an election, and had she elected to take her distributive share, her rights would have been limited to a one-third interest in the real property. She would have receive no part of the personal property. *In re Little*, 22 Utah, 204, 61 P. 899. Her election would of necessity have affected her interest in this property both real and personal. The election by a guardian on her part would have related to and affected her interest, not only in the personalty, but in the realty. Such being the facts, can the guardian by neglect of duty or failure to act, or by acting independently of any order of court, bind the ward by such failure to elect or by such election in the event it is shown that the election made

by the guardian was not for the best interests of the ward? We think not. The widow, by reason of her incompetency, could not make an election. The guardian failed to make such an election, and the court failed to order such an election to be made. The care and control of the ward and her estate being continuously in the jurisdiction of the probate court, and it being the duty of the court to protect not only the person, but the property of his ward at all times, then it must logically follow that the court had continuous jurisdiction to direct an election for and on behalf of the incompetent at such time as the matter was brought to its attention. No other conclusion is or can be consistent with the duty of the court to at all times have a jealous consideration for the interests of the ward and her property.

The third headnote to *Harding's Adm'r* v. *Harding's Ex'r*, 130 S. W. 1098 (140 Ky. 277, Ann. Cas. 1912B, 526), is as follows:

"Where devisees are deprived by some disability of a beneficial right given them by law, the court will protect their interests, so that, if an insane devisee living on the probate of a will was entitled to elect to take under the will or by descent, the court will elect for him to renounce the will upon application made by his committee, if that would be beneficial to him."

The Supreme Court of Wisconsin, in *Van Steenwyck* v. *Washburn*, at page 505, 59 Wis. (17 N. W. 293, 48 Am. Rep. 532), says:

"Independently of the statute, probably no one would question the power of a court of equity, where the application was in time, to elect for an insane widow, or other person incapable from want of capacity of personally making it. Such a power has often been exercised by courts of chancery in England and in this country, and the jurisdiction is well established. Does, then, the statute which requires the widow to elect, limit or abrogate this jurisdiction, so that a court can no longer exert it on behalf of an insane widow? We perceive no sufficient grounds for saying that it does. The object of the statute is to regulate dower, declare when and under what circumstances it shall exist, define its extent, and prescribe the manner in which it may be

barred. True, it provides that, when the widow is put to an election, she shall be deemed to have elected to take the jointure, devise, or other provision, unless, within a year from the death of her husband, she file a notice that she elects to take the share of his estate which the law gives her. But we do not think it was the design of the statute to abrogate the jurisdiction of a court of equity in a proper case. Such an inference should not be made without a clear expression of such legislative intent."

The opinion of the Supreme Court of Michigan *in Re Estate of Andrews*, 92 Mich. 449, 52 N. W. 743, 17 L. R. A. 296, support our conclusions on this phase of the matter in controversy.

We are of the opinion, and so hold, that the court was not without jurisdiction to direct the guardian to make an election on behalf of the widow to take under the provisions of the will at the time the election was made in the instant case.

The remaining questions presented by the record should be briefly noticed. The considerations deducible from the authorities that should influence a court in determining what is for the best interests of an incompetent are probably as clearly and succinctly stated by the Supreme Court of Missouri in Re Connor, supra, as anywhere. In the course of the opinion in that case the court said:

"So that, upon the things which should guide the chancellor, we may summarize the holdings thus: (1) Whatever is done should be for the best interest of the insane, other and all matters being considered; (2) 'best interest of the insane,' does not necessarily mean from a pure monetary viewpoint, but other matters must be taken into consideration beyond the mere matter of dollars and cents; (3) her kinsmen have no interest and they should be left out of consideration; (4) the fact that an insane person (permanently so) cannot use money with discretion, and has no need for money or property further than to comfortably care for her in every way, is a matter of consideration; (5) that the right of a testator to dispose of his property as he pleases, so long as he amply provides for an insane wife, is a matter for consideration; (6) and that the kinsmen of the wife have no claims, either directly or indirectly, upon the bounties of the husband whilst those of the husband have, is always a matter for consideration."

Applying these general rules to the facts in this case: It is undisputed in the record that the widow is now over the age of 90 years; that she and her husband had resided on this homestead for more than 30 years prior to his death; that, by reason of age and other infirmities, she is unable to use or enjoy any property, except such as is necessary for her personal comfort and conveniences. She is attached to the home. It is necessary that she have a nurse. If she elected to take her distributive share she would receive real estate of the probable value of $5,000. She has a nurse attending her who is paid $20 a month and is furnished a home and board in addition. It appears that the widow is given the home free of rent and that it requires in addition not less than $600 yearly to support the ward in such reasonable comfort as she enjoyed while her husband was living. The deceased in his will gave the remainder of the property, after his wife's death, to his sons and daughters, the natural heirs and the persons entitled to his bounty and consideration in the disposition of his property. Those contesting the election made by the guardian have no claim upon the bounty of the deceased, are not his blood relatives, but are grandchildren of his wife by a former marriage. Regardless, however, of who is to receive the property after the death of the widow, the facts, in our judgment, abundantly support the finding of the court that it is to the best interests of the widow that she take under the provisions of the will. Under the terms of the will the entire income of the estate during the lifetime of the widow belongs to and becomes her property. This is true whether the whole of the income is necessary for her support or not. It does not satisfactorily appear in the record just what the total of the rents from the real estate and the interest on the personal property has been since the appointment of the executor, but it does appear that at the time of the hearing there was several hundred dollars in excess of the amount used and necessary for the support of the widow. Whatever this amount is, it belongs to the widow and to her

estate. There is this additional consideration that the court was justified in taking into account in determining the advantages in directing an election to take under the will. There had been expended by the guardian approximately $2,000 for the support of the widow from the date of his appointment until the time of filing his account. Should the widow be conclusively presumed to take her distributive share, necessarily some adjustment would have to be made out of her estate for the amount which she has already received.

In addition to the authorities hereinbefore referred to, see the following as throwing some light upon the questions here discussed: *In re Robinson Estate,* 88 Minn. 404, 93 N. W. 314; *Penhallow* v. *Kimball,* 61 N. H. 596; *In re Stevens' Estate,* 163 Iowa, 364, 144 N. W. 644; 1 Woerner's American Law of Administration, Including Wills (3d Ed.) § 119.

The judgment of the district court is affirmed, with costs.

THURMAN and FRICK, JJ., concur.

CHERRY and STRAUP, JJ., dissent.