# THOMPSON *v.* DISTRICT OF COLUMBIA.

STANDARD WEIGHTS AND MEASURES; DELEGATION OF LEGISLATIVE
POWER; REGULATIONS, UNREASONABLENESS OF; MILK DEALERS. .

1. By Sec. 1 of the act of Congress of March 2, 1895 (28 Stat. 811),
   giving to the sealer of weights and measures "the custody and
   control of such standard weights and measures as now are, or
   as shall hereafter be, provided by the District of Columbia," the
   Commissioners of the District are not given power to fix a stand-
   ard of their own, but, in the absence of a standard fixed by Con-
   gress, the English standard which was brought to the colonies
   and governed therein as part of the common law, and has been
   recognized by Congressional legislation, is the standard with
   which they are given the power to enforce conformity.

2. The act of Congress of March 2, 1895, is not a delegation of power
   by Congress to the Commissioners of this District to fix a standard
   of weights and measures, but is a mere regulation for the just
   and reasonable enforcement of the law to prevent imposition and
   fraud, freed from danger of harshness and oppression in its en-
   forcement by the amendatory act of March 28, 1896 (29 Stat. 75),
   providing that the Commissioners shall prescribe the amount of
   tolerance to be allowed by the sealer of weights and measures, such
   "tolerance" affording a reasonable margin for the honest mis-
   takes of dealers.

3. A fee to the sealer of weights and measures of fifty cents per one
   hundred bottles of milk inspected and sealed, as fixed by the
   Commissioners of this District under their regulations promul-
   gated under the act of Congress of March 2, 1895, relating to
   weights and measures, as amended by the act of March 28, 1896,
   is not, on its face, excessive or unreasonable and cannot be said
   to be so as matter of fact, in the absence of evidence concerning
   the labor or cost of inspecting, sealing and stamping, or showing
   in what respect the fees may constitute an intolerable burden on
   the business of selling milk; nor will one of such regulations
   which requires glass bottles to be stamped, be held to be an un-
   reasonable exercise of power, on the statement of a dealer that the
   bottles would be thereby subjected to great risk of breakage; nor
   will such regulations be declared unreasonable on the showing

of a dealer that his bottles are of a uniform size on the outside but because of various incidents to their manufacture are of irregular size on the inside, and that it is impossible to make all such bottles of a given supposed size uniform in capacity; this incidental variation, the average margin of which is not shown, probably being the reason for the tolerance provision of the amendatory act and the regulation thereunder.

4. In a prosecution of a milk-dealer for refusal to exhibit the glass bottles used by him in the distribution of milk to his customers, to the sealer of weights and measures, testimony by the defendant, that he first measures his milk in cans of forty gallons capacity at his dairy, and then decants it into small bottles which he claims to use not as measures, but as means of distribution, is insufficient to show that the bottles are not measures in contemplation of law.

No. 1260.   Submitted February 4, 190?.   Decided March 4, 1903.

IN ERROR to the police court of the District of Columbia. *Judgment affirmed.*

The COURT in the opinion stated the case as follows:

Corbin Thompson, a dealer in milk, was convicted in the police court of the District of Columbia, under an information charging him with refusing to exhibit to the sealer of weights and measures a glass bottle used for the purpose of measuring milk, and has been granted a writ of error to review the judgment against him.

The prosecution was under the act of Congress of March 2, 1895 (28 Stat. 811).   Section 1 thereof creates the office of sealer of weights and measures and provides that " he shall have the custody and control of such standard weights and measures of the United States as now are, or as shall hereafter be provided by the District of Columbia, which shall be the only standards for weights and measures in said District."   Section 4 authorizes and directs the Commissioners of the District to provide a schedule of fees to be charged by the said officer for his services.   Section 6 makes it the duty of the said officer, from time to time, to try and prove all scales, weights, beams, and measures of every kind, and

to stamp all found to conform to the standard kept in his office with the word " approved," or the letter W and the year in which inspection is made; such as do not conform shall be stamped " condemned " instead.    Section 8 declares that " no person shall neglect or refuse to exhibit any weights, scales, measures, beams, or other instruments used by him or her in weighing and measuring, to the sealer or assistant sealer of weights and measures when and wherever demanded by them or either of them, for the purposes of inspection and · stamping."    Section 9 provides that no person shall use, for buying or selling, any weights, measures, scales, beams, or other instruments, unless the same have been inspected and stamped " approved " or with the letter W by the said officer.    Section 11 prescribes a penalty in case any person, among other things, shall neglect or refuse to exhibit his weights, measures, scales, beams, or other instruments used for the purpose of weighing or measuring, to the said officer or his assistant.

The act of March 28, 1896, amends section 9 of the foregoing act, and provides that " the Commissioner of the District of Columbia shall prescribe the amount of tolerance to be allowed by the sealer of weights and measures."    29 Stat. 75.

The latest amended regulation of the Commissioners, taking effect August 1, 1901, provides " that the glass bottles or jars used for the distribution or delivery of milk or cream to consumers, that hold, when filled to a level with the bottom of the cap or stopper, not less than seven ounces and six drams, and not over eight ounces and two drams for half-pint measures; not less than fifteen ounces and five drams and not over sixteen ounces and four drams for one pint; not less than thirty-one ounces and four drams and not over thirty-two ounces and four drams for one quart; not less than forty-seven ounces and three drams and not over forty-eight ounces and five drams for three pints; not less than sixty-three ounces and two drams and not over sixty-four ounces and six drams for one-half gallon, shall be sealed as measures, and that all dealers in milk who use glass bottles

or jars for the distribution or delivery of milk or cream to consumers shall be charged a fee of fifty cents per hundred bottles for such inspection and sealing."

The prosecution proved a demand made by the sealer, on February 3, 1902, upon the defendant to exhibit his measures, and his refusal to exhibit those made of glass. The defendant testified as follows:

That on the said 3d day of February, A. D. 1902, he was and now is engaged in the business of dealing in milk and cream in the District of Columbia; that the milk and cream delivered by him to his customers is delivered in glass bottles or jars, commonly known as quart bottles, pint bottles, and half-pint bottles; that the said bottles are bought by him in large quantities at a time and are generally manufactured in molds; that the said bottles are respectively of uniform size on the outside, but because of various incidents to their manufacture are of irregular size on the inside, and that it is impossible to make all such bottles of a given supposed size uniform in capacity; that in filling the said bottles for distribution the quantity to be contained in each is, in no instance, measured, and that the process of filling them is to pour a given quantity of milk or cream, say, forty gallons, into a receptacle furnished with a cock or valve, to place under the said cock or valve each bottle as it is to be filled, and to remove it when filled, and that when all of such bottles into which the said quantity of milk or cream is poured are filled, as a general rule, they indicate by their number not to exceed thirty-eight or thirty-eight and one-half gallons, as against the forty gallons poured into the receptacle aforesaid; and that, as a rule, the said bottles when filled and delivered indicate the holding by them of about ninety-five quarts out of every hundred so as aforesaid poured into and drawn from the said receptacle; that the said bottles are not used to measure the milk or cream sold and delivered by him but do so only approximately, the said method of filling the same as aforesaid and distributing them now being practically universal and having been established in the District of Columbia some eight or ten years ago in the interest

of economy of time and labor, increased cleanliness, a more even distribution of the butter fats contained in milk and cream, and greater convenience to the defendant's customers; in that, whereas before the adoption of the said method the defendant's drivers were required to carry and did carry milk and cream in wagons containing large cans from which the milk and cream were delivered from door to door into receptacles furnished by the customers, the desired quantity being measured in each instance and taken from the said wagons and poured from the drivers' measures to the receptacles of the customers, involving the time and labor necessary for the several steps in the process and frequently a delay of a greater or less extent occasioned by the thoughtlessness of servants who were not always ready for the drivers' calls; that under the method aforesaid the bottles are filled and sealed at the defendant's dairy, taken by his drivers to the residences of his customers and deposited in designated places without regard to waiting upon servants or any other of the inconveniences of the old method; that the ordinary life of one of the said bottles is eight times filling, and the loss of such bottles from breakage, theft, and other causes is very great, so that the defendant uses up in his business about eighty thousand such bottles each year; that under the order or regulation of the Commissioners of the District of Columbia, under which this cause was instituted, and in the administration thereof, the sealer of weights and measures of the District of Columbia claims and has the right at any and all times to call upon the defendant for an inspection of his said bottles and claims and has the right to stamp and seal all such bottles when received by the defendant from time to time, and that as incidentals to the stamping and sealing and inspection of the said bottles they would be subjected to great risk of breakage, the time of the defendant and his employees would be consumed to a great extent, and the enforcement and administration of the said order or regulation would put the defendant to great and unreasonable inconvenience and increase of cost in time and labor; that no complaint has ever been made, to the defendant's knowledge,

by any purchaser of milk or cream in the District of Columbia of the working of the said system so as aforesaid now in practice; and that the said bottles are used by the defendant only for convenience in the distribution by him of milk and cream as aforesaid, and, in no instance, are measured as to their capacity before being filled, or are used at all as measures indicating capacity, except in the sense and to the extent that the aim in their manufacture is to make them, as nearly as possible, of a size to contain the desired quantity of milk or cream, as a quart, pint, or half-pint.

The defendant then moved the court to instruct the jury in substance as follows:

1. That the regulation prescribing fees for inspection of glass bottles is invalid.

2. That the regulation is an unreasonable exercise of the power conferred by the act of Congress.

3. That the glass bottles which he refused to exhibit are not measures within the meaning of the law.

4. That the word " measure " in the law means some receptacle familiar to the commercial world as used to measure a given quantity and that the jury must acquit unless they find from the evidence that the jars or bottles described in the evidence were such receptacles or instrumentalities.

The court refused these prayers, and, of its own motion, charged the jury that the law was a valid exercise of power by the Congress, and that the regulation was within the powers of the Commissioners; that the bottles were measures within the meaning of the act, and the defendant should be found guilty if the evidence showed that he had refused to exhibit his bottles upon the demand of the sealer for the purpose of inspection, sealing, and stamping.

Exceptions were regularly taken, both to the instructions refused and those given, as aforesaid.

*Mr. Henry E. Davis* for the appellant.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the District of Columbia.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first contention on behalf of the plaintiff in error, under the errors that have been assigned, is that the Congress has not itself fixed the standard of weights and measures, and has not the power to delegate that authority to the municipal government of the District of Columbia. (1) The second point of this contention will be first considered. The act of 1895, under which the prosecution has been maintained, gives to the designated officer " the custody and control of such standard weights and measures as now are, or as shall hereafter be, provided by the District of Columbia."

We see no intent expressed in these words to confer upon the District authorities the power to fix a standard of their own, according to a system which may or may not, in their discretion, conform to the common standard of the United States, if such there be. The standard weights and measures to be provided by them evidently mean a set of instruments, each of which is commonly called a standard, devised and constructed in exact conformity with the requirements of the legally established common standard of the United States, to serve as the certain test of the accuracy of the weights and measures adopted and used by private individuals in the course of daily trade.

If an inference could possibly be indulged, from the concluding words before quoted, that Congress intended anything more, it would be precluded by the preceding words giving such standard into the custody and control of the sealer of weights and measures. He could have custody and control of nothing else. (2) It is true that Congress, other than by the act of May 19, 1828, adopting a brass troy pound weight procured in London by the Minister of the United States for the use of the mint at Philadelphia, and an act of 1866 legalizing a metric system, appears never to have directly exercised the power conferred by clause 5, section 8, of Article I, of the Constitution to fix the standard of weights and measures.

It does not follow, however, that there is not a lawful

standard capable of enforcement. The power conferred in connection with that to coin money, regulate the value thereof, and of foreign coin, was in pursuance of the general policy that dictated the delegation of the power to regulate commerce with foreign nations, among the several States, and with the Indian tribes. It effectually prevented the several States from fixing standards that might vary and hence prove a hindrance to trade and interchange of commodities. The standard weights and measures of England were brought to the colonies and governed therein as a part of the common law. And this has been recognized in legislation from time to time. Pursuant to a resolution of the Senate, adopted May 29, 1830, the Secretary of the Treasury reported to that body the result of his inquiries into discrepancies in the weights and measures as actually used in the various custom-houses. He further reported that he had adopted a uniform practice in conformity with details given which indicate conformity to the old English standard. For example, the liquid measure was the wine gallon of 231 cubic inches, according to the measure of the English yard. June, 1836, Congress enacted a joint resolution as follows: " That the Secretary of the Treasury be and hereby is directed to cause a complete set of all the weights and measures adopted as standards, and now either made or in the progress of manufacture, for the use of the several custom-houses and for other purposes, to be delivered to the governor of each State in the Union, or such person as he may appoint, for the use of the States respectively, to the end that a uniform standard of weights and measures may be established throughout the Union." March 3, 1881, the Secretary was required to deliver to the governor of each State, for the use of agricultural colleges, and to the Smithsonian Institute, " a complete set of all the weights and measures adopted as standards," 21 Stat. 521. July 11, 1890, an appropriation was made for the further construction, and the adjustment of standard weights and measures to be supplied to the custom-houses, other offices of the United States, and for the several States. 26 Stat. 242. There seems to have been no other

legislation relating to or affecting the liquid measure which is alone involved in this case. That standard, which prevailed under the common law and has been recognized by the legislation of Congress, is the one with which the Commissioners have been given the power to enforce conformity.

(3) The regulation of the Commissioners giving certain latitude of variation in the contents of the vessels in which milk may be delivered is in strict accord with what is called the "tolerance" in the amendment of 1896 to the act of 1895, which is set out in the preliminary statement. That act is not a delegation of power to fix a standard, but is a mere regulation for the just and reasonable enforcement of the law to prevent imposition and fraud. The standard remains fixed and unchangeable, but recognizing the practical difficulty of perfect measurement under it, the same is not required. The law to remedy the mischief of false measures is freed from the danger of harshness and oppression in its enforcement by the "tolerance" which affords a reasonable margin for the honest mistakes of dealers.

2. The schedule of fees prescribed under the authority of the law does not appear excessive or unreasonable on its face, and there is no evidence concerning the labor or cost incurred in the duties of inspection, sealing and stamping, or to show in what respect the fees may constitute an intolerable burden on the business of selling milk.

3. For the same reason, we cannot say that to require glass bottles to be stamped is an unreasonable exercise of power. All that the evidence shows is the opinion of the plaintiff in error, as recorded in the bill of exceptions, that they would be subjected to "great risk of breakage." No facts are stated from which such risk can be inferred, and it ought to be presumed, in the absence of proof, that the framers of the law and the regulations knew of some process by which the stamping could be safely done. To stamp a name or a mark upon an object does not necessarily imply an impression with force. A small glass milk bottle plainly marked "condemned," through the use of some chemical, was in fact exhibited, without objection, on the argument as

showing the customary way in which the sealer performs the duty of stamping the necessary words upon the glass measures.

4. The regulation cannot be declared unreasonable and void upon the testimony of the plaintiff in error " that the said bottles are respectively of uniform size on the outside, but because of various incidents to their manufacture are of irregular size on the inside, and that it is impossible to make all such bottles of a given supposed size uniform in capacity." This incidental variation, the average margin of which is not shown, is probably the reason for the tolerance provision of the statute and the regulation pursuant thereto.

5. The evidence is likewise insufficient to show that the glass bottles used by the plaintiff in error are not measures within the meaning of the law. The fact that he first measures his milk in cans of 40 gallons capacity, at his dairy or distributing center, and then decants it into the small bottles which he claims to use, not as measures, but as means of distribution, is not the controlling fact. What the law seeks to regulate is, not the measures which he used for his own information, but those which indicate to his customers the respective quantities of milk which they order, and for which they are required to pay. What the dealer's general measure may indicate to him is of no consequence to them. What they want to know is the real capacity of the bottles which measure the milk to them, in order that they might not be deceived or imposed upon; and to accomplish this is the object of the law.

The court committed no error on the trial, and the judgment must, therefore, be affirmed with costs. It is so ordered.    *Affirmed.*