## OHIO MERCHANTS' TRUST CO et v CONRAD

Ohio Appeals, 5th Dist, Stark Co

Decided Oct 22, 1931

Lynch, Day, Pontius & Lynch, and John G. Ketterer, Canton, for plaintiff in error.

William B. Quinn, Canton, for defendant in error.

SHERICK, PJ.

Sec 121, GC, provides: "No banker, broker, cashier, director, teller, or clerk of a bank, banker or broker, or other person holding an official relation to a bank, banker, or broker, shall be competent to act as notary public in any matter in which such bank, banker, or broker is interested."

It therefore becomes apparent that it was necessary to determine whether or not the defendant bank was interested in the matter of the settlement of this estate. We believe that this question should be answered in the affirmative. It is plain and clear to us that, should the widow in this estate be held to have elected to take under the will, the debts of the estate would be paid in full before the widow would receive any portion thereof. Now, the trust company held $40,000 of unsecured claims as against the testator's estate. This it was, no doubt, anxious to protect. On the other hand, it is equally clear that, should the widow he held to elect to take under the law, she would be first entitled to her share of the personal estate and a dower interest in the real estate before the payment of any debts. It therefore seems to us that the bank was vitally interested in this matter, due to the further fact appearing in this case that, upon petition and order of the probate court, it was impossible, at the appraised value, to sell or procure a bidder for the more valuable real estate possessed by the testator, and we may say at this time that it appears to us that the widow in this case was rather encouraged in her idea that the properties would sell at the appraised value, and that they were, in fact, worth more and would sell for more than the appraised value. It does not appear from the evidence that it was suggested by any one to her that the real estate might be sold at a much less figure than the appraised value, or that it might have to be reappraised and further offered for sale. And it now appears from the evidence that there is no bidder for this expensive property, that land values have shrunk, and were shrinking at the time of the appraisement, and that the widow was not advised thereof.

Reverting now to §121, GC, we comment that counsel have studiously set forth the earlier enactments pertaining to those who were disqualified as acting as a notary public in certain cases, but we believe that it is not profitable to engage in a recitation of the early history of this act, further than to remark that at the time of and prior to its enactment the great majority of the people lacked confidence in banks, and that as this distrust disappeared the statue was reenacted, removing many of the restrictions theretofore imposed, but we do believe that it was the intention of the legislation then, and as the law now stands enacted, to rather protect the people than the bank.

Counsel also comment at length upon whether or not the act of a notary public is a ministerial or judicial act, but this we do not deem necessary to consider. We believe that this section is clear, explicit, and needs but little, if any, interpretation, and, having determined that the trust company was an interested party, it must follow that its trust officer was not a competent person to act as notary public in taking the widow's acknowledgment to her election, and that the election as made is null and void.

As a second and third reason advanced by the plaintiff, it is claimed that her election was induced and procured by fraud, and, further, that she was not cognizant of her rights in case she elected to take under the law; that her election was no election. In answer to this claim the trust company denies the charge of fraud and further asserts that the plaintiff, in conjunction with Harry B. Conrad, had executed a number of papers in which she treated the property as her own, which are conclusive of the fact that she had by her conduct, elected to take under the will, one of these papers being a trust agreement whereby the plaintiff and Harry B. Conrad had named the trust company as trustee to do certain things; that

certain deeds were made and executed for several of the less valuable pieces of real estate.

We would now consider whether or not her conduct in this respect can be construed as an election to take under the will upon the part of the plaintiff. We would answer this question in the negative. Considering all of the evidence in this case, we find that it is not intimated that the plaintiff received any knowledge or advice concerning the matters of this estate from any other person, save and except her brother-in-law, the two attorneys previously mentioned, the president of the trust company, and its trust officer, Mr. Schultz. The record does not disclose that the plaintiff was apprised or had a full knowledge of the condition of the estate, and of her rights therein, but the testimony of the plaintiff positively states that she had no such knowledge.

We find that our Supreme Court in the case of **Bell v Henry, 121 Oh St, 241, at page 249**, considered what is now known as §10571 GC, which provides that a widow's election may be made before a proper officer competent to take her acknowledgment to the same. We note from that case that the court stated that an election so made is a valid election, "if the provisions of the will, and her rights under it and under the law in the event of her refusal to take under the will, have been fully explained to her prior to the making of such election."

Now, the fact further appears that McCaughey and Pontius were the attorneys for the trust company in the matter of the settlement of this estate, and it appears from the Trust Company's Exhibit No. 11 that these attorneys thereafter submitted a statement to the trust company for services rendered in this estate, and it appears that this account begins with a consultation of McCaughey with the plaintiff concerning the provisions of the testator's will on the 24th day of March, 1928, just a few days after the decease of Charles Conrad. It also appears from the testimony in this case that the plaintiff and her brother approved of this statement, and that the bank paid for the attorney services so rendered.

It therefore appears that throughout the administration of this estate these two attorneys unquestionably represented the bank as its attorneys and agent in this estate and in the matter of all dealings with the plaintiff.

· It is not clear from the evidence whether or not McCaughey and Pontius were the attorneys for the plaintiff. The plaintiff says that they were not her attorneys. On the other hand, the trust company asserts that they were her attorneys, and from an examination of all of the various conflicting statements in this case we believe the truth to be that plaintiff did feel that these attorneys were her attorneys as well as attorneys of the trust company, but that they were to be paid by the administrator of the estate. In view of the fact that we have hereinbefore found that the trust company was interested in the settlement of this estate, we must now conclude that the positions of the trust company and the widow were inconsistent, and that what would have been good advice to the administrator, perhaps, was not good advice to the widow.

The bank in this case, as administrator, stood in a fiduciary capacity. It was dealing with this estate and the estates of other creditors, and, on the other hand, with the plaintiff, the sole person who would inherit the estate. We believe that the plaintiff was entitled to receive from the trust company full disclosures as to all matters and things pertaining to the estate and the probable financial outcome of its settlement. The bank and its agents, therefore, had no right to remain silent in the matter, and the widow should have been fully advised.

It appears that on the trial of this case the defendant bank introduced in evidence two certain letters over the objection of the plaintiff, the first of which was written a year and nine months after the death of the testator. In them she addresses the bank's attorney as her attorney. Now, without these two letters in this case, there is practically no testimony going to prove that the widow did have knowledge of the extent of the estate and the probable outcome of its administration. If our conclusion is right that the testimony in this case preponderates to the effect that the bank's attorneys were her attorneys and supports the claim of the defendant bank that they were her attorneys, then in such event it appears to us that these communications were privileged communications as between an attorney and client and should have been excluded. On the other hand, if the bank's attorneys were not her attorneys, these letters were admissible as declarations against interest; but an examination of these letters in certain respects confirms us in our view that the plaintiff was not fully advised of her rights and of what would be for her best interest, and we note that she therein refers to the purported statement as made by the trust officer of the bank, where she refers to the matter of its being dishonorable to have elected to take under the law; and we would again note that no one testifies in this case to the fact that the widow had any knowledge of the condition of the estate, nor of the probable outcome thereof, keeping

always in mind the expression of the court in Bell v Henry, supra, and the fact that it is therein said that the election of a widow taken before a notary public does not in itself dispense with the prerequisite that the widow be advised of her interest.

Considering further the papers signed by the plaintiff, we must remark that such all seem to have been prepared by the bank's attorneys, no doubt at its instance, and the widow fully trusting in the signing of these various papers was but acquiescing in the procedure as carried forward by the bank in its administration. The estate has not as yet been settled. No innocent third party is affected by a setting aside of this election, and we see no acts that would constitute an election by conduct on the part of the widow herein.

A further claim is made by the widow in this suit, but we do not deem it necessary to consider that question, and, holding as we do to the things herein found, it is the judgement of this court that the judgement be affirmed.

LEMERT and MONTGOMERY, JJ, concur.