**MEAD v. PHILLIPS et al.**

No. 8149.

United States Court of Appeals for the
District of Columbia.

Decided April 30, 1943.

Mr. Arthur J. Hilland, of Washington, D. C., with whom Mr. DeWitt S. Hyde, of Washington, D. C., was on the brief, for appellant.

Mr. Arthur C. Keefer, of Washington, D. C., with whom Mr. Arthur Peter, of Washington, D. C., was on the brief, for appellees.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Thomas Newkirk Phillips, in his will, bequeathed his household furniture and furnishings and personal effects and jewelry to his wife Mary Elizabeth Phillips, during her life, and thereafter to his two sisters. All the rest of his estate he devised and bequeathed to his sister Katharine and the Washington Loan and Trust Company, in trust, (1) to pay the net income to his sister Katharine, to be used by her for the care of his wife during her life; (2) to use part of the corpus of the trust for the same purpose, if this became necessary; (3) upon the death of his wife, the corpus of the trust and accrued income to be distributed to his two sisters; (4) with further provision for distribution to the issue of these sisters, or to the survivor, or to his brothers, or to their issue, in various eventualities. At the time of Phillips' death on February 21, 1935, his wife was mentally and physically incompetent, unable to read, write or talk; helpless, and unable to make known any of her wants or desires. She remained in that condition until her death on January 28, 1940. Needless to say, she did not file a renunciation of the bequest contained in her husband's will. On April 19, 1935, the probate court appointed a guardian ad litem to represent the incompetent widow.[1] On May 1, 1935 he filed an answer in which he consented

---

[1] D.C.Code 1940, § 19—303: "Guardian ad litem for infant or non compos. Whenever it shall appear that any party interested as aforesaid is under age, or non compos, the court shall appoint a guardian ad litem to represent said party at the hearing of the application to admit the will to probate, and with authority to file a caveat, as he may be advised, in behalf of said party."

to the granting of letters to the executors named in the will. On May 15 the will was admitted to probate, and letters were granted to Katharine Phillips and the Washington Loan and Trust Company. On June 24, 1935 a fee of $75 was awarded to the guardian ad litem. He made no further appearance and the incompetent widow was unrepresented from that time forward, except by the executors and trustees, until September. 23, 1935, when Katharine Phillips—sister of the testator, a beneficiary under the will, one of the executors, and a trustee of the trust created by the testator —was appointed and qualified as trustee of the estate of the incompetent widow. Neither she nor the guardian ad litem ever requested action by an equity court to exercise, on behalf of the incompetent, the power of renunciation, or to determine in what manner her interests could be best protected, in that respect.

Following the death of the incompetent, appellant was appointed administratrix of her estate. In that capacity she sued to recover the widow's share of her husband's estate, and to recover the widow's property and damages from the trustee of the estate of the incompetent. In her complaint she alleged that it was the duty of Katharine Phillips, as trustee of the estate of the incompetent, to apply to a court of competent jurisdiction for an order electing, on her behalf, "between the supposed provision made for her in the last will and testament of her deceased husband, Thomas Newkirk Phillips, and the distributive share of his estate which she would have received had. he died intestate, * * *." Among other things, she asked, by way of relief: "That the Court assert and establish the rights of said Mary Elizabeth Phillips, and of her estate, the same as though she or a Court of competent jurisdiction on her behalf had asserted and established her rights in the estate of her deceased husband, Thomas Newkirk Phillips, within the statutory limitation." The court granted appellees' motion to dismiss the complaint, without opinion. On this appeal they contend that: [1] an election by the widow was required; [2] the death of a mentally incompetent wife terminates her power of election; [3] the power of election does not pass to her legal representatives; [4]

equity has no jurisdiction to make an election in her behalf after the statutory period of six months and the death of the widow; [5] Katharine Putnam Phillips, as executrix and trustee under the will of Thomas N. Phillips, was trustee for the wife, as well as for every other legatee; to say that she, as trustee for Mrs. Phillips, was charged with the duty of instituting proceedings by which the will would be rendered inoperative would be to charge her with *antagonistic duties so conflicting as to be almost irreconcilable with faithfulness of her performance:* under the law, she, as executrix and trustee, was bound to maintain the will; [6] if appellant or any of the next of kin of Mary Elizabeth Phillips had desired, they could have filed a bill requesting the Court to elect between conflicting or antagonistic claims; but no such duty devolved upon Katharine Putnam Phillips; [7] even had the Court been called upon to decide the question, in view of Mrs. Phillips' mental condition, and especially because of the ample and liberal provisions made for her in her husband's will, the provisions of the will would have been elected for her, since they were indubitably designed for her personal interest, welfare, and advantage.

Section 18—210 of the District of Columbia Code[2] provides that a devise of land or bequest of personal estate to the wife of the testator shall be construed to be intended in bar of her dower in lands or share of the personal estate, respectively, unless it be otherwise expressed in the will. Section 18—211 of the Code[3] provides that a widow shall be barred of her right of dower and share in the personal estate by such a devise or bequest, unless, within six months after administration may be granted on her husband's estate, she shall file, in the probate court, a written renunciation. But the bar is not an absolute one. Thus Section 18—211 also specifies that if, during the six months' period following the granting of administration, a suit should be instituted to construe the will of the husband, the six months allowed for filing a renunciation shall not commence to run until the date when such suit shall be finally determined. And Section 18—214 of the Code[4] provides, that, if in effect nothing shall pass by such a devise in the will of her husband, the

---

[2] D.C.Code 1940; D.C.Code 1924, § 1172.
[3] D.C.Code 1940; D.C.Code 1924, § 1173.

[4] D.C.Code 1940; D.C.Code 1924, § 1176.

widow shall not be barred, whether or not she renounce, it being the intent of the statute "that a widow accepting or abiding by a devise [or bequest],[5] in lieu of her legal right shall be considered *a purchaser with a fair consideration.*"[6] [Italics supplied.]

In Cahill v. Eberly[7] this court decided that the power of election by a *competent* widow is personal; hence, that it does not survive her death. That case did not involve the question whether the death of an *incompetent* widow also terminates the power; and that is the question which must be decided in the present case. An incompetent widow cannot, personally, make the election which is involved in a renunciation.[8] Nevertheless, a court of competent jurisdiction can exercise the power, in her behalf, during the statutory period[9] or thereafter, prior to her death.[10]

So far the authorities are substantially in accord. They are in conflict upon the question whether such a court can exercise the power, in her interest, after her death. A numerical majority of reported cases hold, or suggest, that it cannot.[11] The better reasoned cases support a contrary conclusion.[12]

A number of the cases which swell the numerical majority decide no more than that the power of renunciation is personal to the widow; hence, that it does not descend to her representative; consequently, that it cannot be exercised in her interest by such a representative.[13] But the question now under consideration is an entirely different one, namely, whether a court of equity can exercise its power in her behalf; and what result will follow if no election is made in her interest. The widow's representative cannot even act in her behalf,

---

[5] Jordan v. American Security & Trust Co., 38 App.D.C. 391, 396: "An examination of sec. 1176 [this section] and the four sections immediately preceding it shows that devises and bequests were used interchangeably in those sections. * * * Sec. 1176 [this section] therefore applies equally to devises and bequests."

[6] D.C.Code 1940, § 18—214; D.C.Code 1924, § 1176. See Coomes v. Clements, 4 Har. & J., Md., * 480, * 484.

[7] 59 App.D.C. 228, 38 F.2d 539.

[8] Penhallow v. Kimball, 61 N.H. 596; Van Steenwyck v. Washburn, 59 Wis. 483, 17 N.W. 289, 48 Am.Rep. 532. See In re Lyon, 173 App.Div. 473, 159 N.Y.S. 951; 4 Page, Wills (1941) § 1363, p. 34; see Note, 74 A.L.R. 452.
Cf. the following cases, where election by incompetent person made without full knowledge of essential facts or of legal rights was held not binding: Nick v. Nick, 195 Iowa 351, 189 N.W. 829; Dick v. Taylor, 124 Kan. 646, 261 P. 579; Ohio Merchants' Trust Co. v. Conrad, 42 Ohio App. 150, 181 N.E. 274.

[9] Battleday's Guardianship v. Hiestand & Hiestand, 210 Ind. 208, 1 N.E.2d 996, 998; Andrews v. Bassett, 92 Mich. 449, 457, 52 N.W. 743, 745, 17 L.R.A. 296; Penhallow v. Kimball, 61 N.H. 596; Kernan v. Carter, 132 Md. 577, 104 A. 530.

[10] In re Hansen's Guardianship, 67 Utah 256, 247 P. 481, and authorities there cited; Gaster v. Gaster's Estate, 90 Neb. 529, 134 N.W. 235; Van Steenwyck v. Washburn, 59 Wis. 483, 17 N.W. 289, 48 Am.Rep. 532.
Contra: Kernan v. Carter, 132 Md. 577, 104 A. 530.

[11] See for example: Williamson v. Nelson, Tenn.Ch.App., 62 S.W. 53; Crozier's Appeal, 90 Pa.St. 384, 35 Am.Rep. 666; Collins v. Carman, 5 Md. 503; Kernan v. Carter, 132 Md. 577, 104 A. 530.

[12] Ambrose v. Rugg, 123 Ohio St. 433, 175 N.E. 691, 74 A.L.R. 449; Spruance v. Darlington, 7 Del.Ch. 111, 133, 30 A. 663, 666; In re Hoye's Estate, 158 Minn. 402, 407, 197 N.W. 852, 854: "In other states, under statutes similar to ours, it is held that, in the absence of evidence showing that the widow had accepted the provision made for her by her husband's will and had consented to surrender her statutory rights, she took under the statute and not under the will. O'Brien v. Knotts, 165 Ind. 308, 75 N.E. 594; Hodgkins v. Ashby, 56 Colo. 553, 139 P. 538; Egger v. Egger, 225 Mo. 116, 123 S.W. 928, 135 Am.St.Rep. 566."
Wright v. West, 70 Tenn. 78, 2 Lea 78, 31 Am.Rep. 586. Cf. Peckenschneider v. Schnede, 210 Iowa 656, 227 N.W. 335.

[13] Nordquist's Estate v. Sahlbom, 114 Minn. 329, 131 N.W. 323; Collins v. Carman, 5 Md. 503, 527; Harding's Adm'r v. Harding's Ex'r, 140 Ky. 277, 130 S. W. 1098, Ann.Cas.1912B, 526. In Vanderlinde v. Bankers' Trust Co. of Muskegon, 270 Mich. 599, 607, 259 N.W. 337, 339, the court, in holding that the right of election is terminated by her death, and does not pass to her representatives, said, nevertheless: "Election by order of the court and by representatives or heirs would proceed upon different theories. In the former, the interests of the wife herself, but with consideration of rights of others, are the governing factors. In the latter, personal and selfish interests naturally predominate."

during her lifetime and during the statutory period, except with permission of the court,[14] or unless the statute confers the power.[15] It is significant, in this respect, that Harding's Adm'r v. Harding's Ex'r,[16] one of the cases upon which appellees rely, was followed, eight years later, by another decision of the Court of Appeals of Kentucky, which made this distinction clearly; and held that an infant, under circumstances similar to those of the present case, was not precluded from contesting the will after her incapacity had ended.[17]

This court has declared the long established policy of the law to be the protection of the wife and the securing to her of a reasonable portion of her husband's estate.[18] In so doing, it relied upon the early decisions of the Maryland courts, particularly Coomes v. Clements.[19] In that case the court said:[20] "* * * it was the common law of England, at the colonization of Maryland, or the grant of the charter to Maryland, and long antecedent to that time, that a widow was entitled to her reasonable part of the goods of her husband, his debts and funeral expenses having been first deducted; and that that reasonable part was one-third, or one-half, according to the predicament in which she stood at the time of the death of her husband; that this reasonable part was not subject to the dominion or control of her husband; that her right was paramount his power, and that he could not, by his will, deprive her of it." Under the common law existing in Maryland prior to creation of the District of Columbia, a husband was not permitted to deprive his wife of her reasonable share of his estate, either directly or indirectly, and a bequest to the wife was not considered in lieu of her legal interest; instead she took both.[21] It was to avoid the result reached by the early cases, permitting a wife to take both under the will and her legal interest as well, that statutes were enacted which required the widow to elect between the two.[22] But it was not the purpose of those statutes to deprive a widow of her common-law rights.

While the common law constitutes a fundamental and substantial part of the law of the District of Columbia,[23] in some jurisdictions, in spite of nominal acceptance of the common law, it has been abrogated or repudiated, not only by legislation but by judicial limitations based upon inconsistencies assumed to exist between it and such intangible concepts as, "the habits and condition of our society * * * the genius, spirit and objects of our institutions";[24] "public policy and sentiment";[25] "the spirit of our free institutions."[26] The Court of Appeals of Ohio[27] declares the rule applicable in that state, as follows: "* * * the common law has no force in

[14] In re Arnold's Estate, 249 Pa. 348, 363, 94 A. 1076, 1081; Andrews v. Bassett, 92 Mich. 449, 457, 52 N.W. 743, 745, 17 L.R.A. 296.

[15] 4 Page, Wills (1941) § 1363, p. 36; see Note, 74 A.L.R. 452.

[16] 140 Ky. 277, 130 S.W. 1098, Ann. Cas.1912B, 526.

[17] Moorman v. Louisville Trust Co., 181 Ky. 566, 205 S.W. 564, 565: "Since we have no statute giving to the guardian the right to make such election for his ward (Harding's Administrator v. Harding's Executor, 140 Ky. 277, 130 S.W. 1098, Ann.Cas.1912B, 526), it is clear the acceptance by the infant or her guardian of the provisions of the will for her support during infancy would not be an election or preclude a contest by the infant after becoming of legal age; * * *"

[18] Jordan v. American Security & Trust Co., 38 App.D.C. 391, 394.

[19] 4 Har. & J., Md., * 480.

[20] Id. 4 Har. & J., Md., at page 483.

[21] Jordan v. American Security & Trust Co., 38 App.D.C. 391, 394; Griffith v. Griffith's Ex'rs, 4 Har. & McH., Md. 101.

[22] Jordan v. American Security & Trust Co., 38 App.D.C. 391, 394.

[23] De Forest v. United States, 11 App. D.C. 458, 465; Cunningham v. Rodgers, 50 App.D.C. 51, 267 F. 609, affirmed 257 U.S. 466, 42 S.Ct. 149, 66 L.Ed. 319; Hill v. United States, 22 App.D.C. 395; Thompson v. District of Columbia, 21 App.D.C. 395, 402.

[24] Komorowski v. Boston Store of Chicago, 341 Ill. 126, 173 N.E. 189, 190.

[25] Peery v. Fletcher, 93 Or. 43, 52, 182 P. 143, 146; Trustees, etc., of Town of Brookhaven v. Smith, 188 N.Y. 74, 78, 80 N.E. 665, 666, 9 L.R.A.,N.S., 326, 11 Ann.Cas. 1: "* * *. * whether common-law rules will be followed strictly by our courts will, necessarily, where no vested rights are actually concerned, depend upon the extent to which they are reasonable, and in accord with our public policy and sentiment."

[26] Fidelity & Deposit Co. of Maryland v. Brucker, 205 Ind. 273, 183 N.E. 668, 670; Barnes v. Midland R. Terminal Co., 193 N.Y. 378, 384, 85 N.E. 1093, 1096, 127 Am.St.Rep. 962: "essentially inconsonant with our circumstances."

[27] McAllister v. Schlemmer & Graber Co., 39 Ohio App. 434, 177 N.E. 841, 842

this state, except in so far as it derives authority from judicial recognition in the practice and course of adjudication in our courts."

It is easy to understand the apparent disregard for common-law principles which is sometimes reflected in the decisions of such states. It is easy to understand that, in such states, the right of a widow to elect may be considered a privilege bestowed by the statute, of which, if free from disability, she may or may not choose to avail herself.[28] Perhaps such an approach may properly result in the conclusion that, if an insane widow fails to elect, she automatically loses all the rights which she would have had at common law, on the theory that whatever rights she does have in such a state spring exclusively from the statute. But, obviously, those cases do not provide a guide for determining the applicable law in the District of Columbia. The statutory provision for widows in the District[29] constitutes a recognition and, in part, a restatement of her rights at common law. It is not to be regarded as a repudiation or abrogation of the common law or as manifesting an intention to occupy the area to the exclusion of the common law. Instead, to the extent that the statutes fail to cover the entire subject, the common law is to be looked to for amplification and definition.[30] Instead of a privilege bestowed by the statute, the requirement of an election is a limitation upon the common-law rights of the widow, and must be so construed.

Although, as already indicated, the Maryland Court of Appeals early recognized the common-law rights of widows,[31] and interpreted the statutes of the state accordingly; later Maryland cases, decided long after the creation of the District of Columbia—and upon which appellees rely in the present case—have drifted in another direction. This shifting of position is illustrated by comparing relevant language of the earlier and later cases. Thus, in Griffith v. Griffith's Executors,[32] decided in 1798, Justice Chase, speaking for the court, said: "I consider the acts of assembly of 1704, 1715, & 1729, as a clear and explicit *recognition of the right* of the wife to one-third part of the personal estate; and I consider these successive acts of the legislature, and the uniform practice conformable thereto, as *the best evidence of* what was *the common law* in the opinion and judgment of the legislature and the citizens of Maryland." [Italics supplied.] In 1798 the Act was passed which later became, without material alterations, the law of the District of Columbia.[33] Thereafter, in Coomes v. Clements,[34] Justice Chase, speaking again for the court, said: "The several acts of assembly relating to the right of the wife to a part of the personal estate of her deceased husband, commencing with the act of 1699, down to the act of 1798, contain a clear, unequivocal, and explicit *recognition of that principle of the common law,* which allows to the wife a reasonable part of the personal estate of her deceased husband." This exposition of the law of Maryland was expressly adopted by this court in 1912, as constituting a correct declaration of the law of the District.[35] But, in the meantime, nearly a half century after the Coomes case, the Maryland court, in Collins, Adm'r, v. Carman, Ex'r,[36] concluded that the question involved in Coomes v. Clements "did not call for a construction of the act of 1798, as to its effect upon a case like the present" ; and adopted an entirely different approach, as follows:[37] "When the law directs an act to be done, or a condition to be performed for the purpose of conferring a right, that right cannot be acquired if the act is left undone, or the condition is not performed. And if no exception is made in favor of insane persons, courts of justice have no

[28] Harding's Adm'r v. Harding's Ex'r, 140 Ky. 277, 130 S.W. 1098, Ann.Cas. 1912B, 526.

[29] D.C.Code 1940, §§ 18—201, 18—205 to 18—209, 18—701 to 18—705.

[30] Keister's Adm'r v. Keister's Ex'rs, 123 Va. 157, 162, 96 S.E. 315, 317, 1 A. L.R. 439; Perry v. Strawbridge, 209 Mo. 621, 637, 108 S.W. 641, 645, 16 L.R.A., N.S., 244, 123 Am.St.Rep. 510, 14 Ann. Cas. 92; Horace Waters & Co. v. Gerard, 189 N.Y. 302, 309, 82 N.E. 143, 145, 24 L.R.A.,N.S., 958, 121 Am.St.Rep. 886, 12 Ann.Cas. 397.

[31] Coomes v. Clements, 4 Har. & J. Md., 480, 483; Griffith v. Griffith's Ex'rs, 4 Har. & McH., Md., 101.

[32] 4 Har. & McH., Md., * 101, * 122.

[33] Jordan v. American Security & Trust Co., 38 App.D.C. 391, 395.

[34] 4 Har. & J., Md., 480, 483.

[35] Jordan v. American Security & Trust Co., 38 App.D.C. 391, 395.

[36] 5 Md. 503, 528.

[37] Id., 5 Md. at page 532.

more power to decree to them the allowance of such rights, because of their mental incapacity to comply with the requisites of the law, than they have to decree in favor of sane persons failing to comply. If the law makes no exception the courts can make none, whether they be courts of law or equity; for where the construction of a statute is before them, the rules of construction are the same in both courts."

This shocking result has no more to commend it than the tenuous reasoning by which it was reached. The failure of the legislature to make any exception in favor of infants and insane widows should have been, in itself, a warning to the court that the legislature had no intention of abandoning the salutary principle of the common law, as was assumed by way of a major premise. There is just as much reason today, as there was two hundred years ago, for safeguarding the interests of widows and young children. Nothing less than direct and unmistakable legislative language could possibly excuse such a judicial determination as that reached by the Maryland court in Collins v. Carman. That the legislation should properly be given an entirely different construction is clearly pointed out by Justice Chase in the Coomes case, when he interprets the language "a purchaser with a fair consideration." He says: "A purchaser of what? Her share or legal right, because that which was intended as an equivalent has proved to be of no value, *and he dies intestate of his personal estate as to his wife.*[38] Her share, or legal right, depends on the predicament in which she stands at the time of the death of her husband, which will be one-half, or one-third; one-half if he died leaving no child, *and of that she is declared to be a purchaser with a fair consideration.*"[39] [Italics supplied.] One cannot come to a market as a purchaser with a fair consideration if, as was held in the Collins case, the husband has "power by his will to

bar, or extinguish the common law rights of his widow."[40] The concept of purchasing with a fair consideration assumes rights and powers in the widow which cannot be cut off, except by her own election, on a bargaining basis. If she is to be considered a purchaser with a fair consideration, there is implicit the idea of offer and acceptance—that the husband's bequest is a valid offer[41] which, to be binding, must be accepted by the widow.

The purpose of legislative enactments upon this subject is more clearly revealed, and, perhaps, more aptly expressed, in statutes which have been adopted in other states. Thus, it is required in some states that the court shall explain to a widow just what is involved in her election to take, or not to take, under her husband's will.[42] Again, in some states it is required that, unless the wife acquiesces in her husband's will, her rights will be those which she would have enjoyed if he had died intestate. In such a case if she fails to accept the provision of the will, before her death, then it is inoperative as to her.[43] Such statutes reflect greater solicitude and more scrupulous regard for the rights of widows, than do statutes which impose upon them the burden of acting affirmatively to protect themselves. But it does not follow that, if a statute is so worded as to call for affirmative action, it should be so interpreted as to despoil a widow, in case of fraud, mistake, or incompetency. The purpose of the statute here involved is that renunciation shall constitute an election to reject,[44] and failure to renounce shall constitute an election to accept, the offer. But there can be no election unless there are two existing, alternative possibilities. If the husband by creating one possibility could destroy the other, then election would be impossible. What he does, instead, in the case of a sane widow, is to force her to choose between two inconsistent, alternative rights.[45] The proposition was well defined

---

38 This language was adopted by us, as stating the law of the District, in Jordan v. American Security & Trust Co., 38 App.D.C. 391, 395.

39 Coomes v. Clements, 4 Har. & J., Md., 480, 484.

40 5 Md. 503, 531.

41 Chambless v. Gentry, 178 Ark. 558, 562, 11 S.W.2d 460, 462; Davis v. Mather, 309 Ill. 284, 288, 141 N.E. 209, 210; Watrous v. Watrous, 180 Iowa 884, 897, 163 N.W. 439, 443.

42 In re Osborn's Estate, 99 Kan. 227,

161 P. 601; Dick v. Taylor, 124 Kan. 646, 261 P. 579.

43 In re Hoye's Estate, 158 Minn. 402, 407, 197 N.W. 852, 854; O'Brien v. Knotts, 165 Ind. 308, 75 N.E. 594; Hodgkins v. Ashby, 56 Colo. 553, 139 P. 538; Egger v. Egger, 225 Mo. 116, 123 S.W. 928, 135 Am.St.Rep. 566.

44 McGee v. Vandeventer, 326 Ill. 425, 432, 158 N.E. 127, 130.

45 4 Page Wills (1941) § 1346, p. 2: "There is a broad principle of equity, running through many different subjects, to

by the Virginia Supreme Court of Appeals, as follows:[46] " * * * the principle of equitable election whereby an obligation is imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person *from whom he derives one that he should not enjoy both.*" [Italics supplied.] But in the case of an insane widow there can be no personal election, hence, neither acceptance nor rejection of the offer; consequently, the offer fails— unless an equity court acts in her behalf— and the widow takes her common-law rights. If, on the other hand, the husband's bequest is defective, then it fails even to create an alternative possibility; it constitutes no valid offer and there is no requirement that the widow make an election. In any event, the common-law rights of the widow, as restated and recognized in the statute, remain intact until a valid election has been made by her, or in her behalf, against those rights.

Another argument, advanced to support the conclusion that failure by an incompetent widow to act in her own behalf cuts off her common-law rights is that statutes which require such an election are of the nature of statutes of limitation; that the repose of titles and of communities requires the result. This argument was heavily stressed in Collins, Adm'r, v. Carman, Ex'r,[47] and Kernan v. Carter,[48] the Maryland cases upon which appellees rely. In the former, the court spoke of "the annoyance and injury of those who have an interest in" an estate, if it should remain unsettled for the whole period of life of an insane widow.[49] In the latter case the court concluded: " * * * while in individual cases some hardships may result, it would be vastly more disastrous if settlements of estates are to be kept in uncertainty for years, probably throughout the lives of insane widows and husbands * * *."[50]

There are several answers to this argument. In the first place, there is no reason why any one should suffer annoyance or injury through delay. An equity court can act on behalf of, and in the interest of, an insane widow, upon request. If heirs or representatives of the widow delay in doing so, then those interested in the husband's estate can petition the court to act. In the present case appellee Katharine Phillips represented both estates, and could, and should, have asked the court to remove the matter from the realm of uncertainty. In the second place, the same balancing of considerations was faced by the common-law courts and decided in favor of the widows, even competent ones. The wisdom, to say nothing of the humanity, of protecting widows and children from the rapacity of those annoyed persons who have interests in husbands' estates, is just as great today as it was in the days of Magna Carta, when the already existing, beneficent rule was expressly recognized.[51] True it is that times have changed and well educated women are, perhaps, better able to protect themselves than they were a century or more ago. Apparently our legislatures have assumed as much, in adopting statutes requiring widows to elect, and fixing a period within which they must elect.[52] To that extent the protection of *sane* widows has been relaxed. But neither better education nor the improved condition of women, generally, has made possible the intelligent exercise of judgment

---

the effect that one upon whom inconsistent rights are conferred has his choice as to which he will take, but can not have both. This right to choose between these inconsistent rights is known as election. The abandonment of the other right when the one is elected, is known as a waiver, or is sometimes termed renunciation."

[46] Swan v. Swan's Ex'r, 136 Va. 496, 516, 117 S.E. 858, 864.

[47] 5 Md. 503.

[48] 132 Md. 577, 104 A. 530.

[49] 5 Md. 503, 534.

[50] Kernan v. Carter, 132 Md. 577, 592, 104 A. 530, 535.

[51] 2 Blackstone, Comm. *492. See Jordan v. American Security & Trust Co., 38 App.D.C. 391, 394: "The protection of the wife and the securing to her of a reasonable portion of her husband's estate has ever been the policy of the law."

[52] Cf. In re Greenberg's Estate, 261 N.Y. 474, 478, 185 N.E. 704, 705, 87 A.L.R. 833: "Here, however, the purpose of the Legislature was the protection of the widow. After September 1, 1930, the absence of protection to the widow under prior laws gave way to the widow's right of election to take a specific part of the estate against the will. The inconsistency in our old law which compelled a man to support his wife during his lifetime, and permitted him to cut her off with a dollar at his death, has given way to a new public policy which no longer permits a testator to dispose of his property as he pleases." Irving Trust Co. v. Day, 314 U.S. 556, 563, 62 S.Ct. 398, 86 L.Ed. 452, 137 A.L.R. 1093.

by an incompetent widow.[53] While the balance of convenience has been thus weighted, legislatively, against sane widows, it would require an absurd interpretation of the statute, we think, to require an incompetent widow to perform an act which, if performed, would be ineffective,[54] or to hold that her silence and inaction constituted an acceptance.[55] In the third place, the policy of the District of Columbia is clearly manifested in the statute governing the limitation of actions, which contains a blanket exemption in favor of infants and insane persons.[56] And, finally, the statute, although analogous in some respects, is not a statute of limitations.[57]

For the same reasons, it is necessary to reject the contention that because the widow received benefits under the will—i.e., that money was expended for her care and comfort—she should be presumed to have elected to abide by its provisions. While such a presumption might properly be indulged, in the case of a competent person, no logic requires it in the present case.[58]

Some cases in the numerical majority group turn upon the laches or bad faith of heirs or representatives of the incompetent. When an equity court reaches the point of acting in the interest of an insane widow, then the bad faith or laches of her heirs or representatives may become proper and useful considerations, along with many others,[59] to guide the court in the exercise of its discretion. But such considerations provide no basis for concluding either that an equity court has no power to act in the interest of an insane widow, or that, in the event of its failure to act, the inaction of her trustee shall constitute an election, solely by reason of lapse of time. Particularly, in the present case, where the widow's trustee was also a beneficiary and the representative of the husband's estate, her laches in protecting the interests of the widow cannot deprive an equity court of power to act in the latter's interest. In this respect, the present case resembles somewhat the Delaware case of Spruance v. Darlington, in which the husband's will was innocently concealed from the widow until after her death. In holding that it was proper for a court of competent jurisdiction to make the election most advantageous to her interest, the court said:[60] "In courts, both of law and equity, the rights of widows are favored."

Appellees urge that, if the widow was well taken care of during her lifetime, she had no other interests which should be considered in determining the applicable law. In Crozier's Appeal[61] and Williamson v. Nelson,[62] cases which fall in the numerical majority group, it is said of a deceased widow's interest in her husband's estate: "It could do her no good, and the good of others was not in the view of the lawmakers." The common-law rights of dower in land and of "thirds"[63] in personal property depended, not alone upon the welfare of the widow, but of her children as well.[64] It is obvious, there-

---

[53] Egger v. Egger, 225 Mo. 116, 137, 123 S.W. 928, 933, 135 Am.St.Rep. 566.

[54] Dexter v. Hall, 82 U.S. 9, 25, 26, 15 Wall. 9, 25, 26, 21 L.Ed. 73; Plaster v. Rigney, 8 Cir., 97 F. 12, 16; see Mr. Justice Clifford, concurring in Johnson v. Harmon, 94 U.S. 371, 373, 24 L.Ed. 271.

[55] Andrews v. Bassett, 92 Mich. 449, 457, 52 N.W. 743, 744, 17 L.R.A. 296.

[56] 31 Stat. 1389 (1901) § 1265; amended 32 Stat. 542 (1902) § 1189, D.C.Code 1940, § 12—201; see Spruance v. Darlington, 7 Del.Ch. 111, 134, 30 A. 663, 666: "The statute of limitations which has been invoked by her executor can have no application in this case, granting that it is available in a court of equity. Until there are parties capable of suing and being sued, the statute does not run."

[57] Wright v. West, 70 Tenn. 78, 84, 2 Lea 78, 84, 31 Am.Rep. 586.

[58] Brown v. Brown, 108 Mass. 386; Moorman v. Louisville Trust Co., 181 Ky.

566, 205 S.W. 564; Nick v. Nick, 195 Iowa 351, 360, 189 N.W. 829, 833.

[59] Carey v. Brown, 194 Minn. 127, 260 N.W. 320.

[60] 7 Del.Ch. 111, 134, 30 A. 663, 666.

[61] 90 Pa. 384, 35 Am.Rep. 666.

[62] Williamson v. Nelson, Tenn.Ch.App., 62 S.W. 53, 59.

[63] Act of Maryland (1729) Ch. 24, § 10.

[64] 2 Bl.Comm. *130: "It is possible, therefore, that it might be with us the relic of a Danish custom: since, according to the historians of that country, dower was introduced into Denmark by Swein, the father of our Canute the Great, out of gratitude to the Danish ladies, who sold all their jewels to ransom him when taken prisoner by the Vandals. However this be, the reason which our law gives for adopting it, is a very plain and sensible one; for the sustenance of the wife, *and the nurture and education of the younger children*." [Italics supplied]; citing Bracton and

fore, that to interpret a statutory limitation upon these common law rights in such manner as to cut them off, arbitrarily, upon the death of an incompetent widow, would be to disregard one of the two primary purposes of the law. For, even in the case of a woman of unbalanced mind, who can say how much of comfort and happiness may come from believing that her children or other dependents will be protected and cared for, during her lifetime and after her death. The interest of such a widow in the welfare of her heirs or other dependents, during her lifetime, is as much to be considered as her own bodily comfort.[65] How much more poignant might be the concern of a widow who, as here, was, perhaps, able to know and understand, yet unable because of paralysis, to express herself. No one can doubt that a wife, with even a spark of reason, would be as much concerned over the condition of her children or other heirs as would a husband over the condition of his. It begs the question to say that, being incompetent, she would, perhaps, never know the difference.[66] Perhaps she would never know whether she herself was being properly cared for: would this argue in favor of dispossessing her during her lifetime? By the same process of reasoning, it could be argued that the heirs of an insane *man* should be deprived of their inheritance. We see no reason for assuming that the intention of the legislators was to protect the heirs of a husband, any more than the heirs of the wife. As to her share of the estate, if she survives him, there is no reason for subordinating her interest, for considering the interests of her heirs as less important than the interests of his, or for permitting her heirs to suffer the loss of an inheritance which they would have enjoyed if her rights had been asserted and established during her lifetime. The New Hampshire case of Penhallow

v. Kimball[67] is sometimes cited in support of appellees' contention upon the point. But, to that extent, the case has been repudiated by the Supreme Court of New Hampshire. In Wentworth v. Waldron[68] it said: "In this connection it should be stated, however, that the principles enumerated in the Penhallow case for the guidance of a court of equity in making an election for a lunatic have been severely criticized, and that their soundness is open to serious question. The idea that the resultant diversion of property from the channel in which the testator intended it to go furnishes an equitable reason for refusing to permit a waiver seems to be clearly unsound. As pointed out by the Illinois court in Emmert v. Hill, 226 Ill. App. 1, the right of a husband to dispose of his property by will is subject to the paramount legal rights of his widow in the estate, and there is no legal or equitable reason why his heirs or beneficiaries should reap an advantage because the widow is insane. Neither is there any legal or equitable principle by which he is empowered to satisfy her claims upon his estate by making suitable provision for her support in his will. A widow is not to be penalized because she is insane."

The rule which we declare in this case must be one of general application, not merely to widows, who, as in the present case, chance to be well provided for; but to all incompetent widows, in all cases which can reasonably be assumed by way of hypothesis: incompetent widows who have been fraudulently deprived of everything by ruthless representatives of their husbands' estates, or by rapacious creditors; incompetent widows with infants, and other incompetents, for whom no provision has been made by trust or otherwise; or against whose interests trustees, appointed to represent them, have conspired to defraud

---

Coke on Littleton. 4 Kent Comm. *35: "This humane provision of the common law was intended for the sure and competent sustenance of the widow and the better nurture and education of her children."

[65] In re Stevens' Estate, 163 Iowa 364, 370, 144 N.W. 644, 646; "It is quite natural in such a case for a widow, if she has heirs, to take them into account when she makes a voluntary election, and, this being true, the court may do the same thing without being charged with

an abuse of discretion. No hard and fast rule should be announced for these cases. At best, it is largely a matter of discretion, which will not, as a rule, be interfered with on appeal."

[66] Andrews v. Bassett, 92 Mich. 449, 456, 52 N.W. 743, 745, 17 L.R.A. 296. In this case the guardian acted upon the advice of the court to "do as he would, were he such widow, and possessed of mental capacity to act in the premises."

[67] 61 N.H. 596.

[68] 86 N.H. 559, 563, 172 A. 247, 250.

them, in violation of the trust relationship. This brings us to consideration of a fact, peculiar to the present case, which emphasizes the necessity for reaching the conclusion which we have reached; namely, the fact that one of the appellees, who was herself a beneficiary under the will of the husband, accepted appointment both as executrix of his estate and trustee for his widow, who, as previously indicated, was paralyzed, helpless, and unable to make known any of her wants and desires. Whether or not the provisions of the will were—in the opinion of the testator and of appellees, as they allege—"indubitably designed for her personal interest, welfare and advantage," nevertheless, a widow is not bound by such considerations.[69] The privilege of renouncing, and electing to enjoy her dower or statutory rights, is intended to permit *her* to decide whether her interests will be better served by another arrangement. In the present case, the widow being incompetent, a guardian ad litem and, later, a trustee were appointed to represent her, and to assert her rights, powers, and privileges. The guardian ad litem apparently made no suggestion concerning an election in her behalf; and the trustee not only failed to act, but now asserts that, as executor and trustee under the will, she was bound to maintain its provisions against the rights of the widow. This is a problem which she and her advisers should have considered before she assumed such conflicting duties. The present case is, for all practical purposes, a contest between the heirs of the testator and the heirs of the widow. Appellee is now

faced with the necessity of explaining whether she used her power as executrix to favor herself, as beneficiary, rather than to protect her cestui que trust, the incompetent widow. Perhaps the absence of clear understanding, as to the applicable law of the District, may explain, if not excuse, her action in assuming to occupy three antagonistic positions at the same time. Moreover, the provision which was made for the widow during her lifetime is persuasive of good faith. But it is important that the duties and responsibilities of such offices shall be fully understood and complied with. Particularly in the case of incompetent persons, it is necessary that fiduciary relationships shall be meticulously observed, and that the obligations of trustee to cestui que trust shall be scrupulously performed. To permit the interests of the incompetent widow, in such a situation as the present, to be casually disregarded, would put a premium upon fraud. To hold that such conduct foreclosed the rights of the widow would be a result so shocking that it could not be countenanced in equity.[70]

It has been held that the execution, by a competent widow, of papers prepared by attorneys for the administrator, who were acting also as the widow's attorneys, without understanding upon her part, did not constitute an election.[71] How can it be said that complete non-action by an incompetent widow, and by her trustee, who was, herself, both an adversely interested party and administrator, should constitute, inequity, either an election or the equivalent of an election?[72] In the case of a competent

---

[69] Watrous v. Watrous, 180 Iowa 884, 899, 163 N.W. 439, 443: " * * * neither the right nor duty to elect is in any sense dependent upon the generosity, or the lack thereof, on the part of the deceased spouse toward the survivor."

[70] Wright v. West, 70 Tenn. 78, 85, 2 Lea 78, 85, 31 Am.Rep. 586: "Here, she was incapable of electing, incapable of consulting others, without any committee, and, it seems, without any friends to act for her. It is impossible to conceive of a stronger array of equitable circumstances to justify the court of chancery in now asserting her rights 'as though she had dissented in time.' Nor am I able to see any serious evil which can arise from the exercise of so plain an equity. The executor who is compelled to settle with a lunatic devisee or legatee, without a committee, must

necessarily come into equity for protection. He would have been under the necessity of so doing, before the statute, if the testator had made an express provision for his widow in lieu of dower, and she had been a lunatic. And he may clearly do so since the statute. If he and the persons taking under the will choose to act otherwise, they do so at their peril, as they would in any other case where there is an infant or lunatic devisee without guardian or committee. Mere delay, and the negligence of friends, this court has held, will not be allowed to prejudice the rights of one in no condition of mind to know or assert them."

[71] Ohio Merchants' Trust Co. v. Conrad, 42 Ohio App. 150, 181 N.E. 274, 277.

[72] Wright v. West, 70 Tenn. 78, 85, 2 Lea 78, 85, 31 Am.Rep. 586.

widow, it is fair to assume that she has balanced all considerations which may affect her and her heirs, and that failure to renounce constitutes a deliberate choice. In the case of an incompetent widow we know the contrary is true. In the former case, it may be fair to limit the exercise of the power to the lifetime of the widow. In the latter case it would be, not only unfair, but, an inducement to persons with interests adverse to the widow and her heirs to exercise undue influence upon the husband, secure appointment as her trustee, and then wait for her death to gather in the spoils. The fact that this did not occur in the present case does not make the dangerous possibility one less to be guarded against.

Under the circumstances of the present case, it was the duty of the trustee to request, promptly, a determination by the equity court of the widow's interests. This not having been done, it became the duty of her representative. The matter having been brought to the attention of the court, its duty was, and is, to make such a determination, weighing, in doing so, the various considerations of the case. Among others, it should take into account the provision which was made for the care and comfort of the widow, prior to her death; and its determination should be made as of the time when the widow was living, in the light of circumstances then existing.

We hold, therefore, that the complaint in the present case stated a cause of action; particularly, that the relief asked, in paragraph three of the first count of the amended complaint, was properly asked, and should be granted. We hold, in the alternative, that, if such a determination is not made of the rights of Mary Elizabeth Phillips and of her estate, the will of Thomas Newkirk Phillips must be considered inoperative as to her, and his estate distributed, as to her, in the same manner as if he had died intestate.

It is not necessary to consider the other issues presented on the appeal. The case will be remanded with instructions to proceed consistently with this opinion.

*Reversed.*

Mr. Justice RUTLEDGE sat during the argument of this case; concurred in the result when it was considered in conference, but became a member of the Supreme Court before the opinion was prepared.