Jones, J.
 

 In instituting her proceeding in the court of common pleas to set aside and vacate her
 
 *245
 
 previous election, the plaintiff in error pursued the remedy recognized in the case of
 
 Melting er
 
 v.
 
 Mellinger,
 
 73 Ohio St., 221, 76 N. E., 615.
 

 On January 25, 1928, while this case was still pending in the court of common pleas, the widow attempted, in the probate court, to retract her previous election to take under the will, and requested that she be permitted to take under the law. While in some jurisdictions the right of revocation of a previous election has been sustained, especially if the application therefor is made within the statutory period for election, in this state this right is given only by a court of equity.
 
 Davis
 
 v.
 
 Davis,
 
 11 Ohio St.,
 
 386: “2.
 
 An election formally made and entered upon the journal at her instance, can not afterward, and within a year from the probate, be set aside by her at pleasure.” The court in that case also holds that such election when made and recorded can be vacated only on petition to the court of common pleas or other court having equity jurisdiction.
 

 In the aspect this case presents, we are asked to pass upon two questions, one of law and one of fact. We will deal with each of these separately.
 

 It is conceded by this record that no citation was made by the probate court that the widow appear and elect whether she would take under the provisions of the will or under the law; nor was there any commission issued to any one to take the election of the widow under the provisions of Section 10573, General Code; nor did the widow, in fact, appear in the probate court, in person, to make her election under authority of Section 10570, General Code, by the terms of which that court is required to explain to her the provisions of the will and the rights of
 
 *246
 
 a relict resulting from the taking or the refusal to take under the will. On the other hand, it is not denied that the widow executed the paper writing purporting to take-under the will. This instrument was duly signed, acknowledged, filed, and recorded in the probate court.
 

 The legal question presented and argued by counsel for plaintiff in error is this: That, notwithstanding the enactment of Section 10571, General Code (111 O. L., 510), which became effective July 28, 1925, its adoption in no wise amends, repeals, or affects the provisions of Section 10570, General Code, requiring the appearance of the widow or widower in person before the probate court, and an explanation by that court of the will’s provisions and of their rights in the testator’s property under the will or under the law in the event of their refusal to take under the will. The argument advanced by counsel for plaintiff in error is that, although the widow’s election may be manifested by a written instrument, signed, acknowledged, and filed in the probate court under the provisions of Section 10571, General Code, the preceding section still prevails, requiring that the widow appear in person before the probate court where the provisions of the will and her rights may be explained by the probate judge, and that such steps are
 
 sina qua non,
 
 even though her rights under the will and under the law were fully explained to her by others when she manifested her election under Section 10571, General Code. If no appearance be made before the probate court, Section 10571 provides: “The widow’s or widower’s election may be manifested by written instrument signed by such widow or widower, duly
 
 *247
 
 acknowledged and filed in the probate court within one year from the date of probate of the will of the deceased consort. In ease such election is made in person in the manner specified in the preceding section, the same shall be entered upon the minutes of the court. If the widow or widower fails to make such election in person as provided in Section 10570, or by written instrument as provided herein, within the time limit provided by Sections 10567 and 10568 or within the time limit provided in this section, then it shall be deemed that she or he has elected to take under the will and she or he shall be bound accordingly and persons may deal with property of the decedent in accordance therewith.”
 

 The preceding section, Section 10570, General Code, reads: “The election of the widow or widower to take under the will shall be made in person, in the probate court of the proper county, except as hereinafter provided. On the application by a widow or widower to take under the will, the court shall explain its provisions, the rights under it, and by law in the event of a refusal to take under the will.”
 

 While it is true that Section 10571, General Code, does not say that an explanation of her rights is required to be made to the widow, it expressly alludes to the preceding section in providing that the election manifested by her written instrument, if made in person
 
 “in the manner specified in the preceding section,”
 
 shall be entered upon the court’s minutes; obviously the manner specified in the preceding section refers to the requirement for explanation, and it furthermore recognizes the validity of an election, whether made in person or by signed instrument, by stipulating that, if neither is availed of within the
 
 *248
 
 same time limit, the relict is deemed to have elected to take under the will. Furthermore, Section 10570, General Code, recognizes the alternative method of election by apt language providing that the election shall be made in person in the probate court,
 
 “except as hereinafter provided.”
 
 Whether the election is manifested by written instrument, under Section 10571, General Code, or by personal appearance in the probate court, under the preceding section, the provisions of the will must, in either event, be fully explained to the widow, as well as her rights under it, or, under the law, in the event of her refusal to take under the will. It is evident that the legislative purpose was to make an absent election, signed and acknowledged, just as valid as one made before the probate court. Were we to construe these related sections as requiring an added duty of personal appearance before the probate court and further explanation by that court, the provisions of the later act — the amended act of 1925 — would be rendered fruitless and ineffective.
 

 We are therefore of the opinion that the election under the amendment of 1925 is as valid, when entered upon the minutes of the court, as an election made under the provisions of the preceding section; but in either case, whether made before the probate judge in person or manifested by a written instrument, as in this case, the election may be set aside by an appeal to a court of equity on a showing of fraud in its procurement, or where the widow has not been made fully cognizant of her rights in case she takes under the provisions of the will, or, under the law, in the event of her refusal to take under the will.
 

 The other question presented is one of fact. At
 
 *249
 
 the time she signed and acknowledged her written election, which was later filed in the probate court, were there full explanations made to the widow and was she apprised of her rights, under the will and under the law, so that she could make an intelligent choice? If she was without full knowledge of the condition of the estate and of her rights therein it cannot be said that she made a lawful election. This subject is fully discussed in the opinions in
 
 Mellinger
 
 v.
 
 Mellinger, supra,
 
 and
 
 Millikin
 
 v.
 
 Welliver,
 
 37 Ohio St., 460, 466. Mrs. Bell at the time of her election was about 87 years of age; and it must be admitted that a greater caution should be exercised and fuller explanations made to a person of that advanced age than would ordinarily be made to one endowed with more acute and discerning mental faculties. There is a great conflict in the testimony as to the character and degree of explanations made to the widow prior to her election. It is undoubtedly true that, had she refused to take under the will, and had taken under the law, she would have received a greater portion of her husband’s estate. On the other hand, there is testimony disclosing that the widow had a separate estate, and that, after having been made fully acquainted with her rights, she was content to abide by her husband’s will and allow him to bequeath the larger portion of his own estate to those who were of his own blood.
 

 The common pleas court, as well as the Court of Appeals, found the issues of fact in favor of the defendants and against the widow, and dismissed her petition. In its opinion the Court of Appeals said: ‘ ‘ The evidence shows that Sarah Bell had been fully advised as to her legal rights under the will of
 
 *250
 
 James Bell and under the law before she signed her written election to take under the will.” The widow has had the advantage of two separate hearings, in each of which the courts, acting under their equity powers, refused to sustain her contention that she was not fully advised in the premises when her election was made on August 15, 1927. We do not review the weight of the evidence in cases of this character, where there is such a substantial conflict. We are therefore constrained to affirm the judgment of the Court of Appeals.
 

 .
 
 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Matthias and Day, JJ., concur.