**SMITH, Plaintiff, v. FIRST NATIONAL BANK OF AKRON, Executor and Trustee et, Defendants.**

Common Pleas Court, Tuscarawas County.

No. 31414. Decided July 12, 1954.

Lucas & Lucas, Columbus, for plaintiff.

Edward E. Edmiston, Cleveland, for defendants Blanche Peoples, Margaret Gifford and Carla Gifford.

Allan Johnson of Buckingham, Doolittle & Burroughs, Akron, for defendant, First National Bank of Akron, Executor and Trustee under the will of the decedent William G. Smith.

## OPINION

By FISHER, J.

This is a suit in equity by Avaline Smith, surviving spouse of the late William G. Smith, in which plaintiff seeks to have the election made by her in the Probate Court of this county on March 31, 1953, to take under the statute of descent and distribution and against the will of the late William G. Smith,

set aside and vacated upon the ground that plaintiff did not have full knowledge of the effect of her said election upon her property rights under the will. The case was submitted to the Court upon the pleadings, the exhibits, an agreed statement of facts, the evidence and the arguments and briefs of counsel for the respective parties to the suit.

The estate of the said William G. Smith, according to the inventory and appraisement, amounts to over $309,000.00, and it appears that part of said property consisting of shares of stock and cash was transferred and delivered to the First National Bank of Akron as trustee under a certain revocable living trust agreement on April 17, 1951, at which time the said William G. Smith made and executed his last will and testament. By this will the balance of testator's estate was directed to be placed in said trust, and certain dispositions were then made by testator out of said trust property to his widow and other beneficiaries.

When plaintiff made her election in the Probate Court, she appeared with her attorney who advised her before the Probate Judge that it would be to her best financial interest to take at law and against the will of her late husband. When asked by the Probate Judge whether she understood her rights under the will and her rights under the law, she replied that she did, whereupon the Probate Judge did not attempt to explain said will and her rights thereunder. At this point it should be made clear that this Court is not necessarily required to determine in these proceedings how much more profitable it would be to the plaintiff under the will than at law. Suffice it to say that the parties have agreed, and evidence was introduced in support of that agreement, that the plaintiff would receive at least $11,000.00 more under the will than she would get at law, thereby showing conclusively that plaintiff's election to take at law was made without adequate, complete and full information as to her relative property rights. She had the inventory before her and thereby knew the nature, extent and amount of the estate in which she would participate, but the mistake was made in trying to determine under which election she would benefit the most. The question is whether under these circumstances this is such a mistake of law and fact against which a court of equity will grant relief. No fraud is involved and no rights of innocent parties have intervened.

There is no question as to the Court's jurisdiction in the matter. It is well recognized that this is the type of case that courts of common pleas will take cognizance of. In **Davis v. Davis, 11 Oh St 386**, it was held: "Such election, when made and recorded, can be vacated only on petition to the court

of common pleas, or other court having general equity jurisdiction."

The contesting defendants assume the position that the plaintiff, having relied upon the advice of her attorney in making her election, is now irrevocably bound thereby, notwithstanding the fact that she was misled by his advice to her detriment. They also assume the position that when she made her election she expressly waived the explanation enjoined by statute upon the Probate Judge with respect to the provisions of the will and her rights under it, and by law in the event of a refusal to take under the will. They further assume the position that this mistake is one of law and that equity may not be invoked to grant relief with respect thereto.

Before proceeding further with an analysis of the legal questions involved, it should be pointed out that under paragraphs 18, 19, 20 and 22 of the agreed statement of facts, the essential material facts are set forth which briefly are as follows: 1.—The plaintiff personally appeared in the Probate Court with her attorney and in the presence of the Judge made her election to take at law. 2.—The Judge, upon being advised by her and her attorney that she understood her rights under the will and at law, stated that he would not then attempt to explain the will to her and her rights thereunder and at law, and thereupon entered her election to take at law. 3.—The difference between what she would receive at law and under the will is $11,000.00—, that is, she would receive at least $11,000.00 more under the will than she would get at law.

The election of a widow to take at law or under the will of her deceased spouse is controlled by §10504-55 et seq, GC, §2107.39 et seq, R. C., and §10504-59 GC, §2107.48 R. C. provides: "When the election is made in person the court shall explain the provisions of the will, the rights, if any, under it and by law, in the event of a refusal to take under the will." One thing is therefore certain from the agreed statement of facts and the evidence introduced:—the plaintiff in making her election relied upon incorrect advice of her counsel as to what she would receive under the will, or at law, and the Probate Judge did not make any further explanations of her rights, so we are now confronted with the question—will a court of equity permit her to rescind her election under such circumstances.

It is a general rule that equity will permit an election to be rescinded if made without full knowledge of the elector's rights and the condition of the estate. There are not many Ohio authorities bearing on this proposition and the Court has been unable to find any Ohio authority with an identical factual situation, but in the case of **Mellinger v. Mellinger, 73 Oh St 221,**

the Supreme Court followed the general rule that elections involve choice and intelligent choice involves a knowledge of both the facts and the law applicable thereto. On page 229 the Court stated as follows: "Before making her election she was entitled to fullest information as to the provisions of said will,—her rights under it, and under the law, in the event of her refusal to take under the will; and it was the· imperative duty of the probate court to advise and inform her touching these matters. Election necessarily involves choice, and intelligent choice involves a knowledge both of the facts and the law applicable to the subject-matter, with reference' to which a choice is to be made. And where, as in the present case, an election is made by the widow, without full knowledge of the condition of the estate, and of her rights, but in ignorance of both, it can not, as matter of fact, be asserted that she has made any choice or election."

In **Millikin v. Welliver, 37 Oh St 460,** it was held on page 466 that: "In order that acts of a widow shall be regarded as equivalent to an election to waive dower, it is essential that she act with a full knowledge of all the circumstances and of her rights, and it must appear that she intended, by her acts, to elect to take the provision which the will gave her. These acts must be plain and unequivocal, and be done with a full knowledge of her rights and the condition of the estate. A mere acquiescence, without a deliberate and intelligent choice, will not be an election. It is believed no case can be found where the facts are held sufficient to amount to an election to waive the widow's rights under the law, unless they are of such a marked character and of such long duration as will clearly and distinctly evince a purpose to take the provisions of the will, and to operate as an effectual equitable bar to dower."

Can it be said that the plaintiff acted in this case with a full knowledge of all the facts and circumstances, and the law applicable thereto? Neither she nor her attorney were cognizant of the fact at the time of her election that she would receive $11,000.00 less than if she had taken under the will. Of course, had she known this at the time of her election, equity would hardly grant her the relief sought. It was so held in **Bell v. Henry, 121 Oh St 241,** but this case also recognizes the general rule that an election may be set aside where it is shown that the widow has not been made fully cognizant of her rights in case she takes under the provisions of the will, or under the law, in the event of her refusal to take under the will.

While it is a well known maxim that ignorance of the law excuseth no one, there are, nevertheless, certain exceptions

to this rule, one of which could very well have application in this case. In Vol. 1, Section 172, Story's Equity Jurisprudence, it is stated that where a widow acted under the erroneous impression that she was entitled to half of the real estate left by her husband, whereas in fact she was entitled to dower in only one-third, she would be allowed to withdraw her election upon the real facts being made known to her as to what property she would legally take. The general rule is then stated as follows: "It is a general rule that a mistake of law pure and simple is not adequate ground for relief. But there are well-defined exceptions to this rule. A mistake by a party as to his antecedent existing legal right, as distinguished from a mistake as to the legal import of the act done, is one which should be and is recognized as a ground for equitable relief from the consequences of such mistake, where the mistake can be rectified without injury to others." In Pomeroy's Equity Jurisprudence Section 512, the author states the rule in the following manner: "It is a well-settled rule of equity that a person bound to elect has a right to become fully informed of and to know all the facts affecting his choice, and upon which a fair and proper exercise of the power of election can depend. To this end he has a right to inquire into and ascertain all the circumstances connected with the two properties,—that is, his own and the one conferred upon him, and especially their relative condition and value; and he will not be compelled to elect until he has made, or at least has had an opportunity to make, such an examination as enables him to learn the truth. It follows that where an election has been made in ignorance or under a mistake as to the real condition and value of the properties, or under a mistake as to the real nature and extent of the party's own rights, such a mistake is regarded as one of fact, rather than of law; the election itself is not binding, and a court of equitable powers will permit it to be revoked, unless the rights of third persons have intervened which would be interfered with by the revocation." Also in Section 349a, supra, it is stated: "Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relations, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

The contesting defendants insist, however, that because the

plaintiff appeared in open court with her attorney who assumed to be familiar with the facts and the law and advised her to take at law and against the will of her deceased husband, the case does not come within the rules above stated, but that she is now irrevocably bound by her election. As stated before, no Ohio authority has been found which bears directly upon this particular point, but in Hanson v. Clark, 246 Ill. App. 496, we find a situation similar to the instant case. On page 501 of the Court's opinion the question is stated whether a widow who, after advice of counsel, has duly filed her renunciation to take under her husband's will is entitled to have the same set aside because of the fact that she was mistaken and misapprehended the legal rights and effects which would result from such renunciation, no rights of innocent third parties having in the meantime intervened. The Court, after reviewing a great number of authorities, and cases from other states and jurisdictions, came to the following conclusion on page 511: "The record before us discloses that no rights of third persons have here intervened; that the widow was well advised as to her rights; that no fraud or misrepresentation of any kind entered into her election; that she was not in any respect negligent; that she made a choice or an election which clearly must have been the result of misapprehension on her part, not alone of law but of the result which would in fact be brought about by the choice. The rights of widows and orphans are favorites of the law. The ruling of the trial court means the widow will be deprived of $18,000 which her husband desired she should have and that it will be distributed to others whom he did not intend should have it. We think the court erred in entering the order and in denying the motion to continue the hearing on distribution until such time as the widow might present her request to the probate court to have her renunciation and election set aside. For this error the judgment is reversed, and the cause remanded."

In re McFarlin, 9 Del. Ch. 430, 75 Atl. 281, we have another case where a widow, acting upon the advice of her attorney, made an election under a misapprehension of her antecedent legal rights, and the Court stated the rule as follows: "Where an election is made under a misapprehension of the law as to her right of dower, even although the mistake resulted from the erroneous advice of her counsel, a widow so electing to take the provisions made by law in lieu of that made for her under her deceased husband's will may be allowed to retract her election, where no rights of third persons who would be injured by a revocation have intervened. Precedents for the

application of even a more liberal rule are frequent, for in many cases a retraction is allowed where the mistake of the person electing was to the amount of property affected." * * * "The fundamental idea of an election is that of a designed choice or election of one thing rather than another, and the selection cannot be made satisfactorily when there is at the time a misconception of the rights between which the choice is made." Blakeman v. Blakeman, 39 Conn. 320; Macknet v. Macknet, 29 N. J. Eq. 54; In re Woodburn's estate, 136 Pa. 606, 21 Atl. 16.

After having reviewed all the authorities cited herein, together with the authorities cited in the briefs of counsel for the several parties in the case, it is the conclusion of the Court that the plaintiff, at the time of making her election, was not fully or correctly informed as to her respective rights at law under the will of her deceased husband; that she was not negligent, but acting upon such advice and information as she then had she made a mistake in taking at law rather than under the will of her deceased husband which would have given her at least $11,000.00 more in property and money than she would get at law; that there are no intervening rights of other persons which could in any manner be adversely affected by a change in her election; and that plaintiff is entitled to the equitable relief prayed for.

It will therefore be the order of the Court that plaintiff's election to take at law and against the will of her deceased husband, William G. Smith, be set aside, vacated and held for naught.