OPINION
{¶ 1} Appellant, Emma Martin ("Emma"), appeals the July 24, 2003 judgment entry of the Common Pleas Court of Allen County finding in favor of Appellees, the Estate of Robert Lee Martin, Dan Martin and Linda Swan.
 {¶ 2} Emma was married to decedent, Robert Lee Martin ("Robert"), for thirty-one years at the time of Robert's death on November 14, 2001. This was the second marriage for both Emma and Robert and no children were born of this marriage. In 1987, Emma and Robert executed Last Wills and Testaments, with the assistance of Attorney Ted Cornwell, which provided that everything in each spouse's estate would pass to the other spouse, and in the case that both died simultaneously in a common disaster, the wills provided that the beneficiary would be The American Cancer Society. Emma had no knowledge prior to Robert's death that Dan Martin, Robert's son who is an attorney, prepared a subsequent Last Will and Testament for Robert, dated October 22, 1991, in which Emma was not named as a beneficiary.
 {¶ 3} The Last Will and Testament of Robert was admitted to the Allen County Probate Court on December 1, 2001. The Last Will and Testament of Robert, dated October 22, 1991, left all of Robert's assets to his four children: Dan N. Martin, Ronald Martin, Linda Swan, and Marvin Martin. No reference was made to Emma in the will. Dan Martin was appointed executor of Robert's estate on December 7, 2001.
 {¶ 4} On January 7, 2002, Emma signed an election of the surviving spouse to take under the will. Sandra Martin, Dan Martin's wife and an assistant at that time in Dan's office, was present at the time Emma signed the election. Sandra Martin testified in court that she did not know the value of Robert's estate at the time Emma elected to take under the will. Sandra Martin testified that she did not have the appraisal and evaluation from Sargent Auctioneers at the time Emma signed the election so she could not advise Emma that she would receive additional value if she elected to take against the will instead of electing to take under the will in which she was not named.
 {¶ 5} The inventory and appraisal, file-stamped January 8, 2002, reflected a probate estate for Robert in the amount of $161,345.15. The schedule of assets for Robert also reflected probate estate assets in the amount of $161,345.15. There were other non-probate assets consisting of two rental apartments and a P.O.D. account that went directly to Emma in the sum of approximately $180,000. There was also an automobile that was set off to Emma according to law with a value of $10,000.
 {¶ 6} On June 14, 2002, Emma filed a complaint to set aside the election and a request for declaratory judgment as to election by the surviving spouse pursuant to R.C. 2106.01. Defendants, Estate of Robert Lee Martin, Dan Martin and Linda Swan, filed a motion for summary judgment on February 28, 2003, alleging a two month gap existed between the repealed version of R.C. 2106.01 and the revised version. Defendants asserted that since the former version of the election statute had been repealed before Robert's death and the present election statute of R.C. 2106.01 was not in effect at the time of Robert's death, Emma therefore had no statutory right to elect to take against the will. Emma then filed her motion for summary judgment asserting that she did have the statutory right to elect to take against the will. The trial court granted Emma's motion for summary judgment, finding that curative and "savings" statutes prevented a gap in the election statute and that Emma had a right as a matter of law to elect to take against the will. The trial court denied defendants' motion for summary judgment. The March 27, 2003 judgment entry of the trial court did not determine the issue as to whether Emma knowingly, intelligently and voluntarily signed the election to take under the will. The matter was set for trial on July 3, 2003.
 {¶ 7} The trial court and the parties agreed that the depositions filed in the case would be part of the record and considered evidence by the trial court. The testimony at trial and in the parties' depositions provided that Dan Martin, Sandra Martin, Linda Swan, Fred Swan and Emma met on two occasions, in November and December of 2001, in which Dan Martin advised Emma that she was not named in Robert's will and she had the right to retain separate legal counsel. Dan Martin testified that he did not have a specific discussion with Emma as to the value of the probate estate and he did not discuss exact numbers with Emma at the meeting held in November, 2001. Dan Martin testified further that Emma was never advised that if she elected to take under the law she would receive approximately $54,000 more than if she elected to take under the will. However, Dan Martin did testify that he informed Emma that if she took under the law she would receive a larger portion of the estate, namely one-third of the probate estate.
 {¶ 8} In its July 24, 2003 judgment entry, the trial court made the finding that Emma had not sustained her burden of proof to set aside her election to take under the will. Emma's complaint was dismissed at that time. It is from this judgment that Emma now appeals asserting the following four assignments of error.
The trial court erred to the prejudice of plaintiff, EmmaMartin[,] in that her election must be done with full knowledgeof her rights as a matter of law and the trial court's judgement(sic) entry is contrary to law.
 The trial court erred to the prejudice of plaintiff, EmmaMartin[,] in that as a surviving spouse she is entitled to fullknowledge of the condition and value of the estate before makingher election as a matter of law and the trial court's judgmententry is contrary to law.
 The trial erred to the prejudice of plaintiff, Emma Martin[,]in that when an election is entered under mistake it justifiesrecision (sic) as a matter of law and the trial court's judgmententry is contrary to law.
 The trial court erred to the prejudice of plaintiff, EmmaMartin[,] in that defendant, Dan Martin[,] as executor owed afiduciary duty to the surviving spouse[,] Emma Martin[,] who wasentitled to full disclosure as to all matters pertaining to theestate and the probable financial outcome of its settlement as amatter of law and the trial court's judgement (sic) entry iscontrary to law.
 {¶ 9} In the interest of clarity and logic, the first, second and third assignments of error will be addressed together since the arguments presented in these three assignments of error constitute one legal argument.
 {¶ 10} Emma Martin argues that this court should grant rescission of the election due to Emma's lack of full knowledge of her rights and of the condition and value of the estate prior to her making the election. Since the determination of the trial court rests upon findings of fact, we will reverse the judgment only if the findings are against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273. Findings that are supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Id.
 {¶ 11} Emma cites the Ohio Supreme Court case of Millikin v.Welliver (1882), 37 Ohio St. 460, 466, for the proposition of law that acts of the surviving spouse to elect to take the provision given in a will must be done "with full knowledge of her rights and the condition of the estate." In the Millikin
case, the widow died before having made her election regarding decedent's estate. The Ohio Supreme Court held that:
In order to bar a widow of her right to dower and to suchshare of the personal estate of her husband as if he had diedintestate leaving children, her election must be made either bymatter of record in the proper court as required by statute, oractually and in face under such circumstances as would createagainst her an estoppel of her right to claim under the law.
Id. at paragraph two of the syllabus. In determining whether the widow had in fact elected, although she did not elect as prescribed by statute, the court considered the widow's actions of not attempting to convert decedent's personal property to her own use, nor place it beyond the reach of the administrator of decedent's estate. Id. at 466. However, the court concluded that "[i]t c[ould] hardly be claimed that, had she been cited to appear before the court to make her election, after doing these acts, she would have been denied her election." Id. It was under these circumstances that the Ohio Supreme Court held that:
In order that acts of a widow shall be regarded as equivalentto an election to waive dower, it is essential that she act witha full knowledge of all the circumstances and of her rights, andit must appear that she intended, by her acts, to elect to takethe provision which the will gave her. These acts must be plainand unequivocal, and be done with a full knowledge of her rightsand the condition of the estate.
Id. Since the facts of the Millikin case and the case sub judice differ greatly, the only proposition of law that is applicable to the case sub judice is that an election must be made by the surviving spouse with full knowledge of her rights and the condition of the estate. Id.
 {¶ 12} Emma also relies on the case Mellinger v. Mellinger
(1906), 73 Ohio St. 221, 229, 76 N.E. 615, in which the Ohio Supreme Court held that:
Before making her election, she [the widow] was entitled tofullest information as to the provisions of said will, and herrights under it and under the law, in the event of her refusal totake under the will; and it was the imperative duty of theprobate court to advise and inform her touching these matters.
The court based its decision in part on the statute in effect at the time of the decision, section 5964, Rev. St. 1905, which provided:
The election of the widow or widower to take under the willshall be made in person, in the probate court of the propercounty, except as hereinafter provided; and on the application bya widow or widower to take under the will, it shall be the dutyof the court to explain the provisions of the will, the rightsunder it, and by law in the event of a refusal to take under thewill.
Id. at 227. The Ohio Supreme Court further held that "[e]lection necessarily involves choice, and intelligent choice involves a knowledge both of the facts and the law applicable to the subject-matter, with reference to which a choice is to be made." Id. at 229.
 {¶ 13} In the case of Smith v. Natl. Bank of Akron (1954), 69 Ohio Law Abs. 102, 124 N.E.2d 851, also relied upon by Emma, the probate judge failed to explain decedent's will to the surviving spouse or her rights thereunder as required by former R.C. 2107.43, amended and renumbered R.C. 2106.06 to R.C.2106.08. The facts in the Smith case showed that the surviving spouse relied upon the incorrect advice of her counsel as to what she would receive under the will in making her election and the probate judge did not make any further explanations to the surviving spouse regarding her rights. Smith, 124 N.E.2d at 853.
 {¶ 14} R.C. 2106.01, et seq., the current provisions for election by surviving spouse, do not provide that the probate court has the duty to explain the provisions of the will or the surviving spouse's rights under the will and rights under the law unless the surviving spouse makes the election in person. An in-court procedure for the surviving spouse's election made outside of court is not provided by R.C. 2106.01 et. seq. Since Emma did not make her election in person, the probate court was not required to "explain the will, the rights under the will, and the rights, by law, in the event of a refusal to take under the will." R.C. 2106.06. Therefore, much of the Mellinger andSmith cases are not applicable to the situation in the case sub judice, other than for the general propositions of law regarding the surviving spouse having full knowledge regarding her rights and the condition of the estate.
 {¶ 15} Further, the Smith case cites Pomeroy's Equity Jurisprudence, Section 512, in which the author states the rule regarding election in the following manner:
It is a well-settled rule of equity that a person bound toelect has a right to become fully informed of and to know all thefacts affecting his choice, and upon which a fair and properexercise of the power of election can depend. To this end he hasa right to inquire into and ascertain all the circumstancesconnected with the two properties, — that is, his own and the oneconferred upon him, and especially their relative condition andvalue; and he will not be compelled to elect until he has made,or at least has had an opportunity to make, such an examinationas enables him to learn the truth. It follows that where anelection has been made in ignorance or under a mistake as to thereal condition and value of the properties, or under a mistake asto the real nature and extent of the party's own rights, such amistake is regarded as one of fact, rather than of law; theelection itself is not binding, and a court of equitable powerswill permit it to be revoked, unless the rights of third personshave intervened which would be interfered with by therevocation.
 Smith, 124 N.E. at 854.
 {¶ 16} The Smith court also cites several cases from courts outside Ohio in which the election of the surviving spouse was set aside on the ground of mistake by the surviving spouse in making the election. Unlike the facts in the case law cited in this opinion, and those additional cases cited in the Smith
opinion, the facts in the case sub judice do not indicate that Emma relied on incorrect information given to her by either her attorney or the probate court. In fact, Emma neither retained her own independent counsel nor appeared in court to make her election in person.
 {¶ 17} The inquiry in this case is whether it can be said that Emma acted with full knowledge of all the facts and circumstances, and the law applicable thereto. This question was put before the trial court and it was determined by the trial court that Emma did have knowledge regarding her rights and the condition of the estate. If the record contains some competent, credible evidence to support these findings of the trial court then we must affirm the judgment of the trial court.
 {¶ 18} The facts in the case sub judice are quite similar to those in the case of Bell v. Henry (1929), 121 Ohio St. 241,167 N.E. 880. In the Bell case, the surviving spouse was about 87 years of age at the time she made her election. Id. at 249. The court noted great conflict in the testimony regarding the character and degree of explanations made to the surviving spouse prior to her election. Id. While the Bell court found that "[i]t is undoubtedly true that, had she refused to take under the will, and had taken under the law, she would have received a greater portion of her husband's estate," the court also found that there was testimony that revealed the surviving spouse had a separate estate, and that, "after having been made fully acquainted with her rights, she was content to abide by her husband's will and allow him to bequeath the larger portion of his own estate to those who were of his own blood." Id.
 {¶ 19} Similarly, in the case sub judice, it has been recognized that Emma would have received approximately $54,000 more if she had refused to take under the will, and had taken under the law. However, there is a conflict in the testimony in the case sub judice regarding the character and degree of explanations made to Emma. Emma claims she was mistaken as to what her share would be if she elected to take under the will, asserting that she was informed she would receive one-half of everything, including probate and non-probate assets. However, the deposition and trial testimony reveals that Emma was informed she would receive assets with a value of approximately $190,000 outside of the assets disposed of by Robert's will. In addition, the testimony reveals that Emma expressed several times that she did not wish to go against Robert's wishes and would not challenge the provisions of the will. The record reveals that there was at least the opportunity on the part of Emma to become knowledgeable as to the value and condition of Robert's estate, although it is unclear whether she made herself fully cognizant of the information.
 {¶ 20} The trial court found that the evidence showed Emma had been fully advised as to her legal rights under Robert's will and under the law before she signed her written election to take under the will. The trial court found that "[i]t was clear and explained to the Plaintiff that if she took against the will she would receive one-third of the Probate Estate; if she did not she got nothing." July 24, 2003 Judgment Entry, p. 13. The trial court further found that there was no pressure exerted upon Emma, she had sufficient opportunity to think about her rights and make an informed decision, that there was no showing of fraud, and that Emma "had been made fully cognizant of her rights and there was no mistake on Plaintiff's part." Id. The trial court determined that Emma had not met her burden of proof to set aside her election to take under the will.
 {¶ 21} As the reviewing court we do not review the weight of the evidence in cases where there is a conflict in the evidence, rather "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, 227 N.E.2d 212. We conclude that the trial court, being in a better position to weigh the evidence and determine the credibility of witnesses, made its determination based upon competent, credible evidence. We are therefore constrained to affirm the judgment of the Common Pleas Court of Allen County.
 {¶ 22} In her fourth assignment of error, Emma argues that Dan Martin, executor of the will, owed a fiduciary duty to Emma to provide full disclosure of matters pertaining to the estate and the probable financial outcome of the settlement. While Emma asserts that Dan Martin breached this duty, such claim was not presented to the trial court for a determination on the issue and we will not address it for the first time on appeal. Atkinson v.Grumman Ohio Corp. (1988), 37 Ohio St.3d 80, 523 N.E.2d 851.
 {¶ 23} Accordingly, Emma's assignments of error are overruled and the judgment of the Common Pleas Court of Allen County is affirmed.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.